**CHURCHILL TRUCK LINES, INC., et al., Petitioners,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents,**

**RPD, Inc. and General Motors Corporation, Intervenors.**

No. 75–1510.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1976.

Decided April 13, 1976.

Howard D. Lay, Wentworth E. Griffin & Frank W. Taylor, Jr., Reeder, Griffin, Dysart, Taylor & Penner, P. C., Kansas City, Mo., for petitioners.

Thomas E. Kauper, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Fritz R. Kahn, Gen. Counsel, and Walter H. Walker, III, Atty., Interstate Commerce Commission, Washington, D. C., for respondents.

James E. McDaniel, Barnard, Baer, Lee, Timm & McDaniel, St. Louis, Mo., Benson T. Buck, General Motors Corp., Detroit, Mich., and Francis W. McInerny and Richard A. Mehley, MacDonald & McInerny, Washington, D. C., for intervenors.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an action by which Churchill Truck Lines and other common carriers (petitioners) seek to set aside an order of the Interstate Commerce Commission (Commission) which granted RPD, Inc. (RPD) a permit to perform certain operations as a contract carrier in interstate commerce. This permit authorized RPD to transport specific items for the General Motors parts division (GM)[1] over irregular routes in an eleven-state area from GM's St. Louis, Missouri, parts facility. Petitioners have served GM in the past and now protest the Commission's order because it has diverted business from them.

In 1970 GM, in concert with RPD, engaged in a study of GM traffic respecting auto parts which served as the basis upon which this application was filed and presented by RPD. Hearings were held and an initial decision by the administrative law judge was served October 2, 1974. Exceptions were filed by petitioners on March 7, 1975, and the initial decision was affirmed and adopted by the Commission's review board No. 2. A petition to review this decision and order was denied in a June 3, 1975, order of division 1, acting as an appellate division of the Commission. On June 25, 1975, petitioners applied to the Commission for a stay of the effective date, and this request was denied July 3, 1975. This court now has jurisdiction by virtue of 28 U.S.C.A. § 2342 (Supp.1976).

It is the contention of the petitioners that the procedures followed by the Commission in the issuance of the permit to RPD were improper, thereby making its resultant action arbitrary and capricious. The main thrust of petitioners' argument on this point is that the Commission acted arbitrarily in approving RPD's application without granting the affected common carriers any opportunity to compete for the GM business.

In *Interstate Commerce Commission v. J-T Transport Co.,* 368 U.S. 81, 88, 82 S.Ct. 204, 209, 7 L.Ed.2d 147, 153 (1961), the leading Supreme Court case in this area, the Court held that section 209(b) of the Interstate Commerce Act, 49 U.S.C. § 309(b) (1970), requires the Commission to weigh the distinct need of a shipper for new contract carrier service against the adequacy of existing services. The Court also stated, "But the adequacy of existing facilities or the willingness or ability of existing

---

1. General Motors parts division is a separate division of General Motors Corporation established in 1969 to improve the availability of auto parts to General Motors' franchised dealers. The permit is restricted to traffic moving between facilities of General Motors parts division and General Motors dealers. The order of the Commission which is contested here has no effect upon the operation and distribution methods of the remainder of General Motors Corporation.

carriers to render the new service is not determinative." *J-T Transport, supra,* 368 U.S. at 88, 82 S.Ct. at 209, 7 L.Ed.2d at 154. *See also United States v. Dixie Highway Express, Inc.,* 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed.2d 639, 641 (1967). The Court further stated:

> The proper procedure, we conclude, is for the applicant first to demonstrate that the undertaking it proposes is specialized and tailored to a shipper's distinct need. The protestants then may present evidence to show they have the ability as well as the willingness to meet that specialized need. If that is done, then the burden shifts to the applicant to demonstrate that it is better equipped to meet the distinct needs of the shipper than the protestants.

*J-T Transport, supra,* 368 U.S. at 90, 82 S.Ct. at 210, 7 L.Ed.2d at 155.

At the hearings on the application which is contested in the present case, RPD and GM presented extensive testimony and introduced a number of exhibits describing in detail the specialized nature of the proposed service, the various combinations of towns and cities comprising the routes to be followed in providing the service, the specialized equipment to be used in performing the service, and the reasons why GM elected to implement a new service and the benefits it expected to derive. *See RPD, Inc., Extension-St. Louis Area,* No. MC–136051 (Sub-No. 3) (I.C.C., Oct. 2, 1974).

Petitioners had the opportunity to fully cross-examine the witnesses of RPD and GM concerning all aspects of the proposed service as well as GM's asserted need of the service. Petitioners also submitted testimony describing their current operations from the GM parts depot at St. Louis to the various points they served. Petitioners at no time during all of the proceedings before the Commission alleged that they had been denied a full and fair hearing.

Even in their petition to this court petitioners do not assert that the Commission failed to follow the procedures specified in *J-T Transport.* Rather, petitioners contend that the procedural process espoused in *J-T Transport* puts the common carrier at such a disadvantage that it amounts to a denial of due process of law when a shipper unilaterally decides to use a contract carrier. Petitioners argue that procedurally there is no opportunity to compete with the captive contract carrier who makes the application after full and complete contractual arrangements have been consummated with a shipper to agree upon needs, costs, and every phase of transportation service. However, petitioners made no such claim during the Commission proceedings.

■ We find that the Commission followed the procedural requirements of the applicable statutes as interpreted by the Supreme Court in *J-T Transport.* When RPD demonstrated that the proposed service is specialized and tailored to the distinct need of the shipper, the burden shifted to petitioners to show they had the ability to meet that distinct need. Petitioners failed to sustain this burden. They were given adequate opportunity to respond to RPD's evidence in the proceedings before the Commission.

Petitioners also claim that the Commission's findings and conclusions are not supported by substantial evidence. "Findings supported by substantial evidence are required." *Interstate Commerce Commission v. J-T Transport Co., supra,* 368 U.S. at 93, 82 S.Ct. at 211, 7 L.Ed.2d at 157.

■ An application for a permit to operate as a contract carrier requires the Commission to undertake a two-step analysis. First it must determine that a proposed operation is for a contract carrier as defined in section 203(a)(15) of the Interstate Commerce Act, 49 U.S.C. § 303(a)(15) (1970).[2]

---

**2.** 49 U.S.C. § 303(a)(15) reads in full:

(15) The term "contract carrier by motor vehicle" means any person which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, for compensation (other than transportation referred to in paragraph (14) of this subsection and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the

Then, if this requirement is satisfied, the Commission proceeds to examine the application in accordance with section 209(b) of the Act, 49 U.S.C. § 309(b) (1970). This section provides five criteria that the Commission must consider.[3]

■ The petitioners do not challenge the finding of the administrative law judge that the service met the definition of contract carriage under section 203(a)(15) of the Act. In considering the section 209(b) criteria, the Commission found that RPD would provide a specialized service designed to meet the well-documented, carefully planned needs of a single shipper. While there will be substantial diversion of traffic from the petitioners, it was found that this diversion would take place whether contract carrier authority was granted or not since the shipper, if unable to obtain contract carriage, would resort to private carriage. Moreover, the Commission found that although a denial of the permit would not have a catastrophic effect on RPD, it would be detrimental to the competitive position of the shipper whose improved method of parts distribution was dependent on a more responsive service than common carriers were able to provide.

■ Contrary to the suggestion of petitioners, the applicant is not required by the relevant statutes or cases to prove that the existing services have not been reasonably adequate. The real question is whether a shipper has a "distinct need" for a different or a more select or a more specialized service. *J-T Transport, supra,* 368 U.S. at 90–91, 82 S.Ct. at 210, 7 L.Ed.2d at 155. *See also United States v. Dixie Highway Express, Inc.,* 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967).

Petitioners contend that the grant of authority to RPD was based upon an application for irregular routes while the record allegedly reflects that RPD plans to operate over regular routes. It is asserted, therefore, that the evidence and grant of authority are not in accord with the application filed.

■ The definition of contract carrier, unlike that of common carrier, contains no requirement that the carrier be authorized to operate over either regular or irregular routes. Moreover, the expression "regular route" is a term of art which means movement over specifically described highways. GM's testimony alluding to the need for "fixed routes" clearly referred to fixed patterns of delivery and not to the need for using particular highways.

We have examined the transcript and the thorough opinion of the administrative law judge and are convinced that he carefully considered each of the necessary criteria and that there was ample evidence in the record as a whole from which he could conclude that the grant of this application was in the public interest and consistent with national transportation policy.

" 'So long as there is warrant in the record for the judgment of the expert body it must stand. . . . "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." ' " *I.C.C. v. Jersey City,* 322 U.S. 503, 513, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420, 1427 (1944), *quoting from Rochester Telephone Corp. v. United States,* 307 U.S. 125, 145–46, 59 S.Ct. 754, 765, 83 L.Ed. 1147, 1161 (1939). *See also Warren Transport, Inc. v. United States,* 525 F.2d 148 (8th Cir. 1975).

furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer.

3. 49 U.S.C. § 309(b) reads in pertinent part: In determining whether issuance of a permit will be consistent with the public interest and the national transportation policy declared in this Act, the Commission shall consider the number of shippers to be served by the applicant, the nature of the service proposed, the effect which granting the permit would have upon the services of the protesting carriers and the effect which denying the permit would have upon the applicant and/or its shipper and the changing character of that shipper's requirements.

Petitioners allege that the Commission's action should be set aside because the Commission failed to comply with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* (1970). Section 4332(C) requires that the Commission issue an environmental impact statement whenever its decision involves a major federal action which. would have a significant effect upon the quality of the human environment. Since it found that the grant of this application was not such a major federal action, the Commission did not issue an environmental impact statement.

The Commission persuasively argues that petitioners lack standing to challenge its decision on this issue. In general, the rules of standing are grounded in the "case" and "controversy" requirements of article III of the United States Constitution. Where the action of a federal agency is being contested, standing is also governed by the provisions of the Administrative Procedure Act, 5 U.S.C. § 702 (1970).[4] In both instances the rules of standing are designed to insure that federal courts decide only concrete cases between true adversaries and that the parties fully and adequately present all the possible issues and arguments in support of their claims.

To establish their standing to challenge the Commission's action, petitioners must satisfy two criteria. First, they must allege that the challenged action has caused them injury in fact, economic or otherwise. Second, the interest sought to be protected by the petitioner must arguably be within the zone of interest protected or regulated by the statute in question. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184, 187–88 (1970). *See also Clinton Community Hospital Corp. v. Southern Maryland Medical Center,* 374

F.Supp. 450, 454–55 (D.Md.1974), *aff'd,* 510 F.2d 1037 (4th Cir.), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975).

Certainly an organization with genuine environmental concerns would be permitted to represent the public's interest in the environment and challenge the Commission's actions in an appropriate case. *See United States v. SCRAP,* 412 U.S. 669, 684–90, 93 S.Ct. 2405, 2414–17, 37 L.Ed.2d 254, 268–71 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 738–40, 92 S.Ct. 1361, 1367–69, 31 L.Ed.2d 636, 645–46 (1972); *National Forest Preservation Group v. Butz,* 485 F.2d 408, 410 (9th Cir. 1973). No such organization has chosen to challenge the Commission's decision in this case.

■ Petitioners, whose sole motivation in this case was their own economic self-interest and welfare, are singularly inappropriate parties to be entrusted with the responsibility of asserting the public's environmental interest in proceedings concerning the issuance of operating authority to motor carriers.[5] Petitioners do not allege any environmental injury to themselves. Their interest in their economic well-being vis-a-vis their competitors is clearly not within the zone of interests to be protected by the National Environmental Policy Act. *Clinton Community Hospital Corp. v. Southern Maryland Medical Center,* 510 F.2d 1037, 1038 (4th Cir.), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975); *Convoy Co. v. United States,* Civil No. 74–757 (D.Ore., March 21, 1975). This Act was not designed to prevent loss of profits but was intended to promote governmental awareness of and action concerning environmental problems.

We are satisfied that in this case petitioners lacked standing to challenge the Commission's determination that the grant of

---

**4.** This statute reads:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

**5.** This environmental issue was not contested in the initial proceedings before the Commis-

sion. It was raised by petitioners for the first time after the application of RPD had been granted. In accordance with Commission regulations, petitioners should have filed in their initial papers with the Commission a statement alleging that the requested Commission action would affect the quality of the human environment. 49 C.F.R. § 1100.250(d) (1975). ˙

RPD's application was not a major federal action significantly affecting the quality of the human environment.

The petition for review is denied.