Don C. CHANDLER, and Jeanne Marie Chandler, Plaintiffs,

v.

John BLOCK, Secretary, Dept. of Agriculture, Allen Brock, Administrator, Farmer Programs, Charles Shuman, Administrator FmHA, John O. Foster, William T. Shay, David E. Cox, Defendants.

No. 83–4025–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

July 15, 1983.

Dale Reesman, Boonville, Mo., for plaintiffs.

Mark Zimmermann, Asst. U.S. Atty., Kansas City, Mo., for defendants.

In the course of the above-described loan transactions, the FmHA obtained secured interests in plaintiff's real estate, farm equipment, livestock, supplies, and inventory.

## ORDER

SCOTT O. WRIGHT, District Judge.

This is an action for declaratory and injunctive relief. Plaintiffs have received various farm loans from the federal government administered by the Farmers Home Administration (FmHA) and financed under the Consolidated Farm and Rural Development Act, Pub.L. No. 87–128, 75 Stat. 307 (codified as amended in scattered sections of Title 7 U.S.C.). Plaintiffs allege that defendants violated the Consolidated Farm and Rural Development Act and their procedural due process rights by failing to notify and consider them for § 1981a loan deferral. Plaintiffs further allege that their constitutional rights will be violated by any non-judicial foreclosure proceeding instituted under R.S.Mo. § 443.325 (1978). Plaintiffs also allege that defendants are required to grant them an opportunity to apply for natural disaster emergency loans, 7 U.S.C. §§ 1013a and 1921 *et seq.* (1976). This Court has jurisdiction pursuant to 28 U.S.C. 1331.

## FINDINGS OF FACT

1. Plaintiffs own and operate a farm in Howard County, Missouri.

2. Defendants, in their official capacities, variously formulate, supervise, or implement the FmHA's farm loan policies.

3. Plaintiffs received loans from the FmHA in the amounts indicated below, and gave promissory notes bearing the interest as shown:

| Date of Note | Principal Amount | Interest Rate |
| --- | --- | --- |
| August 9, 1977 | $ 4,480.00 | 5 percent |
| August 9, 1977 | $14,120.00 | 8 percent |
| August 18, 1978 | $ 5,200.00 | 8 percent |
| February 11, 1980 | $ 5,263.04 | 10½ percent |

4. Plaintiffs' last payments of principal and interest on any of their FmHA loans was on September 7, 1979. Plaintiffs have been delinquent since September 7, 1979.

5. Plaintiffs established normal yields of 90 bushels per acre for corn, 44 bushels

per acre for wheat, and 34 bushels per acre for soybeans. Due, at least in part, to adverse weather conditions, they suffered losses in excess of 30% below normal crop production in:

*1977,* when the county was declared a disaster relief area and plaintiffs qualified for and received a 3% emergency actual loss:

*1978,* when it was extremely wet and their 94 acres in soybeans produced less than than 20 bushels per acre;

*1979,* when plaintiffs lost 50% of their hogs due to scours;

*1980,* when it was hot and dry, and the entire state was declared a disaster relief area, plaintiffs' 90 acres in beans averaged only 13 bushels per acre;

*1981,* when it was wet all season and plaintiffs' 80 acres of wheat and 11 acres of corn yielded no crop.

6. In addition to the adverse weather conditions, the years 1977 through 1982 saw steadily rising costs of production with, for the most part, corresponding lower prices for crops and livestock, all of which were circumstances beyond plaintiffs' control, and contributed to plaintiffs' delinquency in the payment of principal and interest.

7. Plaintiffs were not informed of any right to make a loan application for disaster relief in those years when Howard County was not declared a disaster relief area.

8. FmHA does not grant emergency disaster loans to farmers unless the farmers live within a county designated as a disaster county. No regulations have been promulgated to implement application procedures for 7 U.S.C. Section 1981a loan deferral relief.

9. On March 20, 1981, the plaintiffs were notified of the acceleration of the entire indebtedness due on their loans.

Two reasons were given for acceleration; (1) defaulting under the terms of the promissory notes, real estate deed of trust and security agreements by failing to pay installments of principal and interest when due and permitting the same to become delinquent; and (2) alleged disposal of property covered by the security agreements without the consent of the government.

10. On the same date, the FmHA notified the plaintiffs that unless full payment of the aforesaid indebtedness was received on or before April 22, 1981, the United States would take action to foreclose the plaintiffs' real estate.

11. The plaintiffs were also notified on the same date that they had the opportunity to have a hearing on the acceleration and foreclosure before the Farmers Home Administration's District Director.

12. On May 12, 1981, the plaintiffs appeared before the FmHA's District Director and were represented by counsel.

13. On May 19, 1981, David Cox, the FmHA's County Supervisor in Fayette, Missouri, forwarded notes of the aforementioned appeal hearing to Mr. Chandler and provided him with the opportunity to make any changes in the notes he so desired. No finding was made on the record that plaintiffs had disposed of secured property without consent. Mr. Chandler was informed that his suggested changes would be made a part of the record even if not agreed to by Farmers Home Administration. Mr. Chandler failed to respond.

14. On June 6, 1981, the District Director issued his decision stating that FmHA was willing to stay the acceleration subject to a repayment plan proposed by plaintiff and his attorney.

15. The repayment plan called for the following payments:

| Payment | Date | Paid From |
|---------|------|-----------|
| $6,000 | July, 1981 | Wheat crop |
| $6,000 | October, 1981 | Beans |
| $5,679 | January 1, 1982 | Hogs |

16. On September 2, 1981, plaintiffs were notified of the FmHA's decision to resume acceleration and foreclosure. The decision to so resume was based upon non-receipt of any payment from the wheat crop as earlier agreed upon and the absence of any prospects for payment from soybeans or hogs. The same two grounds given for acceleration on March 20, 1981 were restated. Mr. Chandler testified that weather conditions caused a complete loss of crops in 1981 so that plaintiffs were unable to meet the agreed payment schedule.

17. Plaintiffs were not informed of the deferral relief provided by 7 U.S.C. § 1981a during the aforementioned hearing or appeal process. Nor were plaintiffs informed of emergency natural disaster loans, 7 U.S.C. Section 1961, for those years that Howard County was not declared a disaster relief area.

18. On September 21, 1981, plaintiffs appealed to the Assistant Administrator of the FmHA in Washington, D.C. and requested the opportunity to present additional information in person.

19. On October 19, 1981, the Acting Assistant Administrator rendered a decision affirming the decision of the District Director to resume acceleration and foreclosure. The grounds given for affirmation were the plaintiffs' defaults under the terms of their promissory notes, real estate deeds of trust and security agreements by failing to make payments of principal and interest when due and by selling secured property without the consent of the Government and failing to properly account for the proceeds thereof.

20. On November 17, 1981, plaintiffs appealed the decision of the Acting Assistant Administrator to the Administrator.

21. On December 30, 1981, the Administrator rendered a final decision affirming the Assistant Administrator and the District Director. The Administrator found that the earlier decisions were not arbitrary and capricious. Any alternatives to foreclosure were rejected because plaintiffs' "financial and production status has deteriorated to the point where [they] do not have a reasonable chance for success." The Administrator did not discuss § 1981a and its effects upon the plaintiffs' chances for success.

22. Defendants published notice of foreclosure for January 24, 1983, together with notice by registered mail to plaintiffs in accordance with the provisions of R.S.Mo. § 443.290 (1980).

## STANDING

As previously stated, this is a suit challenging the procedure used by the FmHA in implementing the provisions of 7 U.S.C. § 1981a. The statute provides:

In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear

no .interest during or after such period: Provided, that if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.

7 U.S.C. § 1981a.

■ The defendants asserted at the consolidated hearing for preliminary and permanent injunction, in their trial brief, and in their proposed findings of law and fact that the plaintiffs lack standing to challenge violation of 7 U.S.C. § 1981a. The test for standing when administrative actions are challenged is two-tier. The plaintiffs must show that there is a "case" or "controversy" within the meaning of the Constitution and that their interests are "arguably within the zone of interests to be protected or regulated" by the statute in question.[1]

■ The first tier of the standing inquiry is the "case" or "controversy" requirement. There must be a "case" or "controversy" within the meaning of the Constitution before a plaintiff can bring suit. *Association of Data Processing Service Organization v. Camp,* 397 U.S. 150, 151–52, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). To satisfy the case or controversy requirement, the plaintiff must show that he has suffered an injury in fact. *Id.* The injury sustained by the plaintiff must be one which is concrete and which the court can redress if the plaintiff prevails. A concrete injury is a particular injury sustained by the plaintiff and caused by the defendant's alleged unlawful action. *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 220–21, 94 S.Ct. 2925, 2931–32, 41 L.Ed.2d 706 (1974). The Supreme Court in *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40–43, 96 S.Ct. 1917, 1925–27, 48 L.Ed.2d 450 (1976), held that a plaintiff's injury must be redressable by the court. "[A] plaintiff ... must allege specific, concrete facts demonstrating ... that he personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). *But see Bryant v. Yellen,* 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980) (plaintiffs found to have standing although no personal injury was demonstrated); *Planned Parenthood v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (plaintiffs found to have standing although they did not allege specific facts showing that they would benefit from a favorable court ruling); *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (plaintiffs found to have standing although no specific facts alleged showing that they "would benefit in a tangible way" from a favorable decision).

The second tier of the standing requirement involves an examination of the plaintiff's asserted interests and the statute in issue. *Taylor v. Jones,* 653 F.2d 1193,

---

1. The first part of the standing test is a constitutional limitation. The second part of the test established in *Association of Data Processing Service Organization v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970), is apparently prudential and may have been derived from the Administrative Procedure Act, 13 Wright, Miller & Cooper, Federal Practice & Procedure, § 3531 at p. 200 (1975). The Administrative Procedure Act, 5 U.S.C. § 702, provides that

[a] person suffering a legal wrong because of agency action, or adversely affect or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

*See Churchill Truck Lines v. United States,* 533 F.2d 411, 416 (8th Cir.1976) (discussion of standing). The zone of interest test has been criticized by commentators and often ignored in recent Supreme Court decisions. Davis, Administrative Law Treatise, § 24:17 (2nd Ed.1983). In *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), the Supreme Court summarized the law of standing without mention of the zone of interests test. The Court's two-prong test for standing was comprised of (1) injury in fact and (2) injury fairly traced to the defendant's actions. *Id.* at 74, 98 S.Ct. at 2630–31. The test apparently was revived in *Valley Forge Christian College v. Americans United,* 454 U.S. 464, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982), wherein the Court listed the zone of interests test among the requirements for standing.

1207 (8th Cir.1981). "The interest sought to be protected by the petitioner must arguably be within the zone of interest protected or regulated by the statute in question." *Churchill Truck Lines, Inc. v. United States,* 533 F.2d 411, 416 (8th Cir. 1976), *citing, Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970).

■ The first part of the standing test requires that the plaintiffs establish that they have suffered a concrete injury. The plaintiffs allege that they were injured by the defendants' failure to implement a deferral program. The plaintiffs allege that defendants' failure to provide them with notice and opportunity to apply for § 1981a deferral violated their right to procedural due process and led to their monetary default. The remedy they seek is a stay of foreclosure proceedings until the FmHA has complied with § 1981a requirements. The Court is fully empowered to order a stay of foreclosure proceedings until such time as the FmHA has complied with statutory mandates. The plaintiffs have sufficiently established an injury for standing purposes.

The defendants cite *Turnbull v. Block,* No. 82–6053–CV–SJ, slip op. at 1 (W.D.Mo., filed Nov. 1, 1982), and *Holmes v. Block,* No. CV82–L–606, slip op. at 3–4 (D.Neb., filed Dec. 30, 1982), for the proposition that the plaintiffs lack standing because the Court cannot redress their alleged injury. In both *Turnbull* and *Holmes,* FmHA borrowers brought an action to enjoin the Secretary of Agriculture from refusing to comply with 7 U.S.C. § 1981a. In both cases the administrative record reflected that the foreclosure proceedings were based upon both the plaintiffs' failure to make payments when due and the plaintiffs' failure to properly account for the sale of collateral. Collateral conversion can be a basis for foreclosure. Both courts held that the plaintiffs lacked standing to challenge the Secretary's alleged non-compliance with § 1981a.

The courts held that the plaintiffs in *Turnbull* and *Holmes* lacked standing because they failed to present an injury which could be redressed by a favorable court decision. In both cases the courts found that the foreclosure proceedings were based on independent grounds. The courts reasoned that even if the plaintiffs obtained the court relief sought, i.e., compliance with the alleged mandates of § 1981a, foreclosure would ensue because of the collateral conversion. Since foreclosure would proceed regardless of a favorable court ruling, the plaintiffs' injury could not be redressed. The plaintiffs lacked standing because their injury could not be redressed.

■ In this case, the plaintiffs have established a redressable injury. First, the plaintiffs in this case have alleged that § 1981a grants them the right to be considered for loan deferral relief. Denial of consideration is itself an injury sufficient to support a finding of standing even if the deferral is not ultimately granted. The plaintiffs' injury, denial of an alleged statutorily created right to consideration, can be redressed because this Court is empowered to order the defendants to consider deferral relief.

■ Second, in this case, foreclosure proceedings were instituted on plaintiffs' loans because of non-payment *and* alleged disposal of secured property. A review of the foreclosure notice and the administrative record does not support a finding that foreclosure proceedings would have been instituted if the sole basis for default had been the alleged collateral conversion. The administrative record demonstrates that the reasons for foreclosure in this case, non-payment and disposal of secured property, were concurrent and not independent grounds. Further, defendant Cox testified at trial that the FmHA does not always foreclose on farmers who have defaulted by disposing of secured property without consent. Defendant Cox testified that a number of borrowers sell collateral without the prior consent of the FmHA but that the agency institutes acceleration and foreclo-

sure proceedings only when loan payments are not made. Thus, in this case, there was not a basis for foreclosure independent of non-payment of principal and interest when due. In conclusion, the plaintiffs have suffered an injury redressable by the Court.

■ The plaintiffs also have met the second part of the standing test. 7 U.S.C. § 1981a provides that the Secretary of Agriculture may forego foreclosure of an FmHA loan in situations where the borrower makes a showing that he has failed to make loan payments because of circumstances beyond his control. Plaintiffs are FmHA borrowers who allege that they have failed to make payments because of circumstances beyond their control.[2] The interest which they seek to protect is "arguably ... within the zone of interest protected or regulated by the statute in question." *Churchill Truck Lines, Inc. v. United States*, 533 F.2d 411, 416 (8th Cir. 1976), *citing, Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970).

■ Having resolved that the plaintiffs have standing to bring this suit for injunctive relief, the Court further finds that the Secretary failed to comply with the requirements of § 1981a in this case. This Court and others previously have found that § 1981a requires the Secretary to inform borrowers of the provisions of § 1981a, to

grant borrowers an opportunity to be heard concerning the propriety of deferral relief, and to exercise his discretion to determine whether the relief requested should be granted. Section 1981a applies in cases where borrowers have failed to make payments because of circumstances beyond their control. *Matzke v. Block*, No. 82–1075, slip op., (D.Kan. Jan. 14, 1983); *Allison v. Block*, 556 F.Supp. 400 (W.D.Mo. 1982); *Curry v. Block*, 541 F.Supp. 506 (S.D.Ga.1982). But see *Neighbors v. Block*, No. LR–C–82–765, slip op., (N.D. Ark. Dec. 15, 1982). The plaintiffs have demonstrated that they failed to make loan payments in the past due to circumstances beyond their control. Whether § 1981a relief is proper in this case is a decision for the FmHA, but that decision must be made; the discretion granted must be exercised.[3] *Tuepker v. Farmers Home Administration*, 708 F.2d 1329, 1332 (8th Cir.1983) (failure to institute a program or follow a statutory directive invokes judicial review). Plaintiffs must be given an opportunity to apply for deferral relief. The defendants are directed to comply with the provisions of § 1981a by formulating standards for § 1981a deferral and stating findings and reasons showing a proper application of those standards.

## NON–JUDICIAL FORECLOSURE

■ Plaintiffs allege that the foreclosure sale threatened by defendants, to be held

---

**2.** Generally, a standing determination is made on the basis of the pleadings. *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1973). Plaintiffs' pleadings clearly show that they meet the zone of interests test.

At least one court has indicated that if an allegation of personal injury sustained by the plaintiff is controverted by the defendant, then the plaintiff must demonstrate facts supporting his allegations. *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 715 at n. 22 (D.C.Cir. 1977). The Supreme Court also indicated in *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416–17, 37 L.Ed.2d 254 (1973), that discovery may ensue to determine if an injury has in fact been sustained and that motions for summary judgment on the issue of standing are proper if the allegations are a sham.

The defendant has asserted that the plaintiffs lack standing to challenge § 1981a because their

non-payments were *not* caused by circumstances beyond their control. This Court is extremely reluctant on a standing determination to look beyond the pleadings and essentially conduct an examination of the merits. That hesitancy is particularly present in cases such as this where an agency is the appropriate forum for the determination of the applicability of requested relief. The FmHA in this case did not determine why the plaintiffs were in monetary default. The Court notes, however, that the plaintiffs demonstrated at the hearing for a preliminary and permanent injunction that their failure to make loan payments was due to conditions beyond their control.

**3.** The administrative record reflects that FmHA was acutely aware of the plaintiffs' financial difficulties and the economic and weather conditions which lead to their difficulties.

pursuant to the power of sale contained in the deed of trust and the non-judicial sale provision of R.S.Mo. 443.290–.325 would violate their due process rights by failing to provide them notice of foreclosure and an opportunity for hearing. Plaintiffs seek to enjoin the defendants from foreclosing their loans until authorized by a proceeding for judicial foreclosure. This claim is not ripe for adjudication because of the present contingent nature of the foreclosure proceedings and this Court's ruling that the FmHA must consider § 1981a deferral in this case.

## NATIONAL DISASTER EMERGENCY LOANS

Plaintiffs also allege that defendants violated the Consolidated Farm and Rural Development Act and their procedural due process rights by failing to provide them notice of or opportunity to apply for and receive the natural disaster emergency loans provided by 7 U.S.C. § 1961 et seq. and that defendants violated their rights under the Equal Protection Clause by arbitrarily excluding them from the disaster loan program. Plaintiffs further allege abuse of discretion. Plaintiffs seek to enjoin the defendants from foreclosing their loans until the FmHA has promulgated regulations providing that individual farmers in the plaintiffs' situation are given actual notice of and an opportunity to apply and receive disaster loans.

By agreement of the parties a combined hearing for a preliminary and permanent injunction was held. After the hearing, the defendants filed a trial brief which dis-

cussed 7 U.S.C. § 1981a. The trial brief did not address plaintiffs' claims for relief based upon 7 U.S.C. § 1961 et seq. After the hearing, both parties filed Suggested Findings of Fact and Conclusions of Law. The plaintiffs devoted seven pages of their brief to a discussion of the FmHA's implementation of current statutes and regulations. The defendants' brief contained the heading "Natural Disaster Emergency Loans" but the discussion under the heading was devoted to non-judicial foreclosure.

National disaster emergency loans are authorized under the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1013a, 1921 et seq. (1976), and are administered under the provisions of 7 U.S.C. § 1961 et seq. (1976). The program provides that the Secretary of Agriculture shall make and insure loans to farmers who have suffered production losses caused by a natural disaster. 7 U.S.C. § 1961(a) (amended August, 1978).

Prior to the 1978 amendment, 7 U.S.C. § 1961 provided that the Secretary should designate areas where a natural disaster substantially affected farmers and make loans available in those areas. The 1978 amendment to § 1961(a) abolished the area designation requirement although the Department of Agriculture continued to use area designations in its administration of the loan program. The legislative history of § 1961(a) indicates that the area designation requirement was abolished so that the Secretary would be able to make loans more readily available to eligible farmers.[4]

4. When the disaster relief program was initiated, the statutes under which it was enacted provided that disaster relief should be made available in county-wide designated areas. Because the county designation requirement created unnecessary delay, the statutes were amended in 1978 to create a more effective program designed to provide assistance to all farmers who suffered the requisite production loss, not just those farmers who lived within a designated area. 7 U.S.C. § 1961 had provided that the Secretary shall designate an area as an emergency area if farming within the area was substantially affected by a natural disaster. Loans were then made available to farming operations

within the area. 7 U.S.C. § 1961(b) (1961). 7 U.S.C. § 1965 provided that the State Director of the FmHA could make emergency disaster loans to an area within a state provided that the natural disaster had substantially affected 25 or fewer farms within the area. 7 U.S.C. § 1961 was amended in 1978. 7 U.S.C. § 1965 was repealed in 1978. The amended version of § 1961 provided that the Secretary shall make loans available to farmers whose production was substantially affected by a natural disaster. The area designation previously employed was discarded so that loans more readily could be made available to all farmers who suffered the requisite crop loss.

FmHA regulations during the applicable years provided that emergency loans should be made available to farmers who suffered the requisite loss and who operated within counties designated as disaster counties. In 1978 the eligibility requirements for emergency loans were discussed in 7 C.F.R. § 1980.170 which provided that:

(b) ... [t]o be eligible for a guaranteed EM loan, an applicant must:

(4) operate in a county or counties in which EM loans are authorized to be made under: (i) A designation by the Federal Disaster Assistance Administration (FDAA) pursuant to a Presidential declaration of a major disaster or emergency. (ii) A natural disaster designated by the Secretary of Agriculture. (iii) A State Director's authorization when 25 or less farmers, ranchers or aquaculture operators are substantially affected by a natural disaster.

(5) Have suffered qualifying production losses or property damage in a declared or designated county or counties.

Similar regulations were in effect in 1979, 1980 and 1981. In addition, in 1979–81 the Agriculture regulations contained a provision outlining the procedure for making emergency loans available. 7 C.F.R. § 1945.20 provided that:

EM loans are made available in counties or similar political subdivisions named by FDAA as eligible for Federal assistance under a major disaster or emergency declaration by the President, *and* in any area where unusual and adverse weather conditions have resulted in severe production and/or physical losses which have substantially affected *one or more farmers*. (emphasis added).

The regulations in 1979, 1980, and 1981 also provided that when a natural disaster occurs which has substantially affected one or more farmers and where loss can be determined, the county supervisor shall obtain the state director's clearance to make EM loans available and *advise disaster victims that loans are available*. 7 C.F.R. § 1945.20(a). Even where weather conditions merely threaten to develop into a natural disaster, the county supervisor must notify the state director and advise farmers who inquire that consideration is being given to making loans available. 7 C.F.R. § 1945.20(a)(iii)(B)(2). Once it is determined that physical loss has occurred, EM loans shall be made immediately available. 7 C.F.R. § 1945.20(a)(iv).

Both County Supervisor Cox and Gary McCalfee, the Missouri State Office Farmers Program Specialist in charge of interpreting Department of Agriculture policies, testified at the hearing regarding natural disaster loans. During the years in question, the FmHA did not follow the applicable statutory and regulatory directives regarding disaster loans. Loans were not made available to farmers where 26 or more farms within the county suffered the requisite production loss due to a natural disaster but the county as a whole did not suffer the requisite percentage loss. Relief was made available only if 25 or fewer farms within a county suffered the requisite loss or where more than 25 farms suffered the loss and the county as a whole suffered the requisite percentage loss. This procedure for determining the availability of disaster loans is now codified in part at 7 C.F.R. 1945.20 (1983) and was first contained in the Code of Federal Regulations in 1982.

■ The plaintiffs established that they suffered a substantial and readily determinable losses due to natural disasters during 1977 through 1981.[5] This information was known by the FmHA; however, the FmHA did not follow the dictates of the relevant statutes and regulations by making loan applications available. Plaintiffs must be given the opportunity to apply for the disaster loans.[6] The plaintiffs cannot be de-

---

5. The plaintiffs received a disaster loan in 1977 and in 1980 they applied for disaster relief through the SBA rather than the FmHA.

6. In a normal case, the Court is fully aware that the doctrine of laches or the statute of limitations might have prohibited this suit and may well prohibit farmers similarly situated from bringing a like suit. In this case, however, the

nied emergency loans because Howard County was not formally declared a disaster county.

Plaintiffs have essentially sought an order compelling the FmHA to consider them for disaster loan relief. Defendants' sole defense stated at the hearing is that the plaintiffs did not apply for the loans in question. This defense is meritless because the plaintiffs were never informed that disaster relief was available. Further, the agency did not follow its own regulations. The administrative record does not reflect that the FmHA considered whether plaintiffs were entitled to disaster relief. *See* 7 C.F.R. 1945.20. During their appeal process the plaintiffs reported that they had suffered from adverse weather conditions, but at no time did the agency determine if disaster relief should be available to them.[7]

In accordance with the foregoing, the defendants are hereby enjoined from foreclosing on the plaintiffs' farm until such time as the necessary compliance with 7 U.S.C. § 1981a and 7 U.S.C. § 1961, as outlined in this order, is made. It is further

ORDERED that the defendant shall bear the costs.

defendant did not raise either affirmative defense.

7. Although exhaustion of administrative remedies was not formally raised by the defendant and, accordingly, may have been waived, *Asarco, Inc. v. Environmental Protection Agency,* 578 F.2d 319, 321 at n. 1 (D.C.Cir.1978), the Court finds that on this issue the plaintiffs' exhaustion of all appeals relative to the defendant's foreclosure action adequately satisfied any exhaustion requirement. The facts relative to applicability of disaster relief were contained in plaintiffs' FmHA file which was reviewed on appeal. Plaintiffs during points of the appeal were unrepresented by an attorney. Plaintiffs stated in a letter to the FmHA on November 17, 1981, that their farm had flooded and that they had not been able to obtain federal financing.

Further, the plaintiffs were not informed at any point of their rights to appeal in regard to disaster loans. Thus, the agency effectively denied meaningful administrative review.