**UNITED STATES of America, Plaintiff,**

v.

**Richard J. SERVAES and Mary I. Servaes, Defendants.**

**No. 83–6058–CV–SJ–6.**

United States District Court,
W.D. Missouri, W.D.

Jan. 23, 1985.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Dale Reesman, Williams, Reesman & Tate, Boonville, Mo., for defendants.

## MEMORANDUM AND ORDER

SACHS, District Judge.

The parties' pending cross-motions for summary judgment in the above-captioned case present a dispute between the Farmers Home Administration (FmHA) and farmer-borrowers in Buchanan County, Missouri. The defendants, Richard J. and Mary I. Servaes, obtained FmHA farm loans in 1979 and 1980 and executed promissory notes and security agreements covering their farmland as collateral. Security for the loans was provided in part by the execution of two deeds of trusts which conveyed the defendants' real estate to the Missouri state director of the FmHA as trustee. For reasons to be discussed later in this memorandum, the FmHA accelerated all of the defendants' loans in August of 1981 (and again in February of 1982) and proceeded to purchase the defendants' real property at a non-judicial foreclosure sale on September 7, 1982 after a number of unsuccessful administrative appeals by the defendants. The present action was commenced by the Government for adjudication of title to the real property, for possession of the premises, for a writ of assistance directing the United States Marshal to put the FmHA in possession of the premises, and for damages resulting from defendants' refusal to vacate the premises after due demand was made. On May 1, 1984, this court granted defendants leave to file their first amended answer and counterclaim. The counterclaim invokes various statutory and constitutional provisions and asks the court to enjoin plaintiff's efforts to foreclose and gain possession of the premises until defendants are given the opportunity to apply for and obtain various loans for which they qualify *and* until the plaintiff promulgates national regulations which "fully implement adequate loan servicing regulations, policies, and procedures, including deferment, for the farm programs under the Act [Consolidated Farm and Rural Development Act (CFRDA)]." The parties have now submitted a Stipulation of Facts and have fully briefed their respective claims.

*Eligibility for loan moratorium program pursuant to 7 U.S.C. § 1981a*

A 1978 amendment to the Consolidated Farm and Rural Development Act of 1961 was enacted by Congress to provide temporary relief to farmers unable to meet their debt obligations to the FmHA. That amendment provides, in part:

> In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. 7 U.S.C. § 1981a

The substantive and procedural requirements that this new provision imposes on the Secretary of Agriculture were the subject of the Eighth Circuit decision in *Allison v. Block*, 723 F.2d 631 (1983). The farmer-plaintiffs in *Allison* sought declara-

tory and injunctive relief from the acceleration of their FmHA loans and foreclosure on their property on the ground that the Secretary's failure to promulgate adequate loan deferral regulations under 7 U.S.C. § 1981a constituted disregard for that statute, a violation of plaintiffs' due process and equal protection rights, and an abuse of discretion. The Eighth Circuit affirmed Judge Wright's injunction against foreclosure proceedings based on the Secretary's failure to comply with the loan moratorium amendment to the Act. *See Allison v. Block*, 556 F.Supp. 400 (W.D.Mo.1982). Specifically, the court of appeals agreed with Judge Wright that "section 1981a creates a right to have certain uniform procedures established and requires the Secretary to develop substantive standards applicable to deferral applications." 723 F.2d at 634. The court rejected the Secretary's argument that implementation of § 1981a was to be left to the discretion of the Department of Agriculture. After examining the legislative history underlying the 1978 amendment, the Eighth Circuit concluded that Congress "intended the Secretary to give notice of the availability of section 1981a relief to all CFRDA borrowers subject to loan acceleration or foreclosure and to establish a uniform procedure under which borrowers can make the requisite requests and prima facie showing [of eligibility]." *Id.* The current regulations did not satisfy these notice and hearing requirements and, therefore, an injunction against foreclosure was justified on procedural grounds alone. In addition, the Secretary had "abdicated" his responsibilities under § 1981a by his failure to develop "substantive standards at the agency level to guide ... [his] discretion in making individual deferral decisions." *Id.* at 637. In sum, foreclosure of the plaintiffs' farm was enjoined until the Secretary of Agriculture fully implemented the loan deferral statutory provision.[1]

The parties in the present case have stipulated that the "Farmers Home Administration did not implement the provisions of 7 U.S.C. Section 1981a in its dealing with defendants." Stipulation of Facts, paragraph 15. Defendants further allege that they were never given notice of possible deferral relief available under this statute. Rather than rearguing the merits of *Allison* or contending that subsequent action by the FmHA has brought the Department of Agriculture into compliance with the Eighth Circuit's interpretation of 7 U.S.C. § 1981a, the plaintiff here asserts that defendants are not entitled to invoke the rights and remedies created by that statute (as elaborated in *Allison*) because (1) misconduct in connection with the loan destroys their standing to invoke these rights and (2) they failed to exhaust their administrative remedies prior to bringing their counterclaim. For the reasons discussed below, the court holds that plaintiff's standing and exhaustion arguments are without merit and that defendants are entitled to injunctive relief along the lines approved by the Eighth Circuit in *Allison*.

Plaintiff's standing argument is based in large part on the language of 7 U.S.C. § 1981a. The Secretary's loan deferral authority granted in this provision is limited to situations in which because of circumstances beyond the borrower's control, "the borrower is temporarily unable to continue making payments of such principal and interest...." The Government contends that if an independent ground exists for acceleration and foreclosure other than the farmer's nonpayment of his FmHA loans, then the farmer lacks standing to raise the loan deferral or moratorium defense because he would be subject to foreclosure anyway for nonmonetary default. The borrower would suffer no injury from the non-implementation of 7 U.S.C. § 1981a because even if a loan moratorium was available based on the nonpayment of loans,

---

**1.** "For purposes of the present appeal, we affirm the injunction against foreclosure on the Allisons' farm not only pending proper notice of the procedures developed to process section 1981a requests, as previously discussed, but also pending publication of uniform substantive regulations or a reasoned decision on their particular request consistent with section 1981a requests nationwide." *Id.* at 638.

that program would not cure or assuage the borrower's other default. In the present case, plaintiff asserts that the independent ground for acceleration of the promissory notes was the defendants' failure to account for the disposition of crops pledged to FmHA as security for the loans. The first notice to the defendants of the acceleration of their debt, an August 24, 1981 letter from the state director of the FmHA, stated that default had occurred "by failure to pay installments of principal and interest when due, permitting the same to become delinquent, *and* due to your alleged disposal of property covered by the security agreement without the consent of the Government." (emphasis added) Exhibit 8, attachment to Stipulation of Facts.

■ A similar standing argument was presented to Judge Wright in *Chandler v. Block,* 589 F.Supp. 876 (W.D.Mo.1983). In that case, FmHA foreclosure proceedings were commenced because of non-payment of loans *and* the alleged disposal of secured property. Judge Wright concluded that the farmer-plaintiff did have standing to challenge violation of 7 U.S.C. § 1981a because "[t]he administrative record demonstrates that the reasons for foreclosure in this case, non-payment and disposal of secured party, were concurrent and not independent grounds." 589 F.Supp. at 881. Because a review of the pertinent documents revealed that foreclosure proceedings would not have been instituted "if the sole basis for the default had been the alleged collateral conversion," the plaintiffs were harmed by the Secretary's failure to implement the loan deferral statute. *Id.* I accept the analysis by Judge Wright in *Chandler,* and the analogy to this case, in particular the conclusion that disposal of secured property is not a basis for foreclosure independent of the farmers' monetary default—nonpayment of their FmHA loans. The letters sent by the FmHA to the defendants in the present case indicate that the primary reason for the acceleration and foreclosure was the Servaes' monetary default. For example, a November 6, 1981 letter from John Garrett, acting district director of the FmHA, to the de-

fendants informed the Servaeses that foreclosure would be delayed until the harvesting and selling of defendants' 1980 and 1981 crops. The defendants were directed to pay the FmHA $35,000 "[a]s these sales are completed"; "[i]f this crop is not sold and the Farmers Home Administration is not paid this amount by December 15, 1981, then foreclosure proceedings will be resumed without further delay." This grace period given the defendants shows that the FmHA's ultimate decision to foreclose was to be based on whether defendants would make a significant payment on the loans in order to cure, at least in part, their monetary default. While this November 6, 1981 letter also instructs the defendants "to account for proceeds from mortgaged property until your loans are paid in full," there is every reason to believe that adequate debt payments would have shielded defendants from foreclosure regardless of their disposition of collateral. The August 24, 1981 letter spoke of the defendants' *alleged* disposal of collateral *and* their monetary default. Had the Secretary intended to rely on the former factor as an independent basis for acceleration foreclosure, presumably more than allegations of collateral disposal would have been cited. Concrete instances of conversion or unlawful disposal would likely have been described and verified.

The court also notes on this subject the factual finding made by Judge Wright that, according to an FmHA official who testified at the trial of *Chandler v. Block,* "a number of borrowers sell collateral without the prior consent of the FmHA but … the agency institutes acceleration and foreclosure proceedings only when loan payments are not made." 589 F.Supp. at 881–82.

The Government cites a slip opinion issued by this court in *Turnbull v. Block,* No. 82–6053–CV–SJ (November 1, 1982). That decision, denying a preliminary injunction because of questions regarding a farmer-plaintiff's standing to bring an action to enjoin the Secretary from refusing to implement a loan moratorium program pursu-

ant to 7 U.S.C. § 1981a, can be distinguished from the present lawsuit because I made a tentative finding in *Turnbull* that "the decision to accelerate payment of plaintiffs' loan was based on the failure to account for security." *Id.* at 2. Footnote 1 in the *Turnbull* decision, however, does indicate that the nonmonetary default may have been only one factor in the decision to accelerate, with the failure to make payments also a contributing factor. If that is the case, the facts in *Turnbull* may be comparable to the situation presented in *Chandler* and the present action. Although Judge Wright's efforts to distinguish *Turnbull*, therefore, may not be entirely satisfactory, principles of "comity and uniformity" dictate that substantial deference and sometimes controlling deference be given to the considered rulings of a colleague on a multi-judge court. *See In re Airport Car Rental Anti-trust Litigation,* 521 F.Supp. 568, 571–72 (N.D.Cal.1981), *aff'd* 693 F.2d 84 (9th Cir.1982). "Orderly functioning of the judicial process" is advanced when the accident of assignment does not materially affect the outcome of litigation.

Particular deference is due the decisions of a judge who has entered final judgment in companion litigation based on the principles considered and adopted. A special effort should also be made to conform one's rulings to opinions that a fellow judge in the district has considered important enough to be published. Because the *Chandler* decision was published, unlike my ruling in *Turnbull,* the former opinion is more likely to be relied on by members of the bar and by parties involved in similar litigation in this district.

It should also be noted that the Secretary had the opportunity to appeal Judge Wright's opinion in *Chandler* but chose not to do so. This significant legal development occurred after my *Turnbull* decision. In effect, what the plaintiff is now seeking is for this court to disregard a colleague's holding which it could have challenged previously on appeal. I decline to do circuitously what the Government might have done directly. Forum shopping should not be encouraged.[2]

Because, at the very least, the alleged disposal of collateral by these defendants was only a concurrent reason for acceleration and foreclosure, this court finds the *Chandler* decision to be both compelling and on point. That a substantial reason for the FmHA's actions was the monetary default of the defendants is enough to give these borrowers standing to challenge the Secretary's admitted failure to implement the provisions of 7 U.S.C. § 1981a (concerning loan deferrals or moratoriums for farm borrowers who are temporarily unable to make payments).

The Government contends, in the alternative, that the defendants are precluded from the type of challenge to administrative action approved by the Eighth Circuit in *Allison v. Block* because of their failure to exhaust their administrative remedies. Specifically, the plaintiff points to an April 16, 1982 letter that advised the defendants that they had 30 calendar days in which to request further administrative review of an adverse decision. Exhibit 11, attachment to Stipulation of Facts. "Defendants requested additional review by the administrator on May 28, 1982, but were advised that their failure to apply prior to May 16, 1982, concluded the administrative review of their case." Stipulation of Facts, paragraph 11. Plaintiff asserts that the defendants' failure to comply with the established procedure for administrative appeals means that they cannot raise their counterclaim in a federal court action; the Government cites the "well-established rule" that

---

**2.** The practice of deferring to the prior decisions of other judges of the same court, particularly published decisions, may be compared with the appellate practice in which a subsequent panel is bound by a prior panel decision. E.g., *Ridgley v. Ceres, Inc.,* 594 F.2d 1175, 1178 (8th Cir. 1979) (Ross, J., concurring), *United States v.* *Bohn,* 508 F.2d 1145, 1147 n. 3 (8th Cir.), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975). *Schultz v. Onan Corp.,* 737 F.2d 339, 346 n. 5 (3rd Cir.1984) (formal rule making "reported panel decisions" binding on subsequent panels).

aggrieved parties must exhaust their administrative remedies prior to filing an action for judicial review.

■ A strict enforcement of the exhaustion of administrative remedies rule would be particularly inappropriate here because one element of the injunction approved in *Allison v. Block* was a requirement that the Secretary give notice of "the availability of section 1981a relief" to all CFRDA borrowers subject to acceleration or foreclosure *before* foreclosure is undertaken. 723 F.2d at 634, 636. Defendants have alleged that at no time were they given notice of "possible loan servicing tools, including emergency or disaster loans for which they qualify, or deferral relief." If without notice or knowledge of their possible remedies under 7 U.S.C. § 1981a, the defendants cannot have been expected to raise their loan deferral or moratorium claims during the administrative process. Presumably, defendants did not learn of this avenue of relief until after the completion of the administrative review process. Since one of the objections offered by defendants to the Government's foreclosure action is the lack of notice of section 1981a relief, it makes no sense to penalize the defendants for not bringing to the attention of the Secretary a claim that it was the Secretary's duty, under *Allison,* to bring to their attention. Accordingly, defendants' failure to comply with the thirty-day deadline imposed by the Secretary (or the FmHA) will not be construed as a bar to a consideration of their claims based on 7 U.S.C. § 1981a.[3]

■ Because the FmHA did not implement the provisions of the 1978 loan deferral amendment to the CFRDA in its dealings with defendants (Stipulation of Facts, paragraph 15) and because defendants are entitled to contest this failure to act, relief

pursuant to the injunction approved by the Eighth Circuit in *Allison v. Block,* 723 F.2d 631, is appropriate. Further actions by the plaintiff to execute on its Trustee Deed under Power of Sale or to obtain possession of the disputed premises will be enjoined until the Secretary has satisfied the procedural and substantive requirements imposed in *Allison* vis-a-vis these particular defendants. *See* footnote 1 of this order for a brief description of the conditions of the injunction approved in *Allison.*

### *Eligibility for National Disaster Emergency Loans*

Defendants challenge the Government's actions in implementing emergency farm loan legislation, 7 U.S.C. § 1961 et seq. Two related allegations are made. First, defendants argue that the "area designation" regulations promulgated by the Secretary are contrary to congressional intent to have loan eligibility determined on a case-by-case basis. Second, the plaintiff is accused of failing to provide defendants with notice of the provisions of the disaster loan program and with an opportunity to be heard. Similar challenges to an FmHA foreclosure were ruled by Judge Wright in *Chandler*; this court finds Judge Wright's conclusions to be compelling and, therefore, will grant the defendants the same relief afforded to the Chandlers.

As discussed in greater detail in *Chandler,* 589 F.Supp. at 883–885, prior to a 1978 Amendment to the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1961 "provided that the Secretary should designate areas where a natural disaster substantially affected farmers and make loans available in those areas." This area designation scheme was deleted in the 1978 amendment. 7 U.S.C. § 1961(a) now provides that the Secretary shall make loans

---

**3.** Exhaustion of administrative remedies has been excused in some cases "when there is nothing to be gained from the exhaustion … and the harm from the continued existence of the administrative ruling is great." *Wolff v. Selective Service Local Bd. No. 16,* 372 F.2d 817, 825 (2d Cir.1967). Because the Government has stipulated that the FmHA did not implement the

loan deferral provisions of 7 U.S.C. § 1981a in its dealings with the defendants, the court agrees with the defendants that further resort to administrative appeals would have been futile. Apparently, it was the settled policy of the FmHA to deny relief to farmer-debtors under that statute.

to applicants whose "farming, ranching, or aquaculture operations have been substantially affected by a natural disaster in the United States or by a major disaster or emergency designated by the President...." "The legislative history of § 1961(a) indicates that the area designation requirement was abolished so that the Secretary would be able to make loans more readily available to eligible farmers," regardless of whether they lived in counties that had been designated as disaster areas. 589 F.Supp. at 883. 7 U.S.C. § 1970 (1984 Supp.) defines an eligible farmer as one who has substained at least a 30% loss of normal per acre or per animal production, "or such lesser per centum of loss as the Secretary may determine," as a consequence of the disaster. The Department of Agriculture, however, has never ceased applying area designation requirements for eligibility for natural disaster emergency loans. The regulations currently in effect provide for emergency loans to applicants "having qualifying severe physical and/or production losses *within a county* named by FEMA as eligible for Federal assistance under a major disaster or emergency declaration by the President or under a natural disaster determination by the Secretary of Agriculture." 7 C.F.R. § 1945.20 (1984). While it is not entirely clear how the Secretary's procedures in operating the emergency loan program have changed over the past few years (defendants, for example, cite to a January 10, 1983 letter from the Comptroller General of the United States to Senator Eagleton as well as the 1982 Emergency Operations Handbook for USDA State and County Emergency Boards), it is clear that the Secretary continues to use an area designation approach. The Government concedes in its brief in opposition to the defendants' summary judgment motion that 7 C.F.R. § 1945.20 does implement such an area designation procedure. It is this practice that Judge Wright condemned in *Chandler.* "Plaintiffs must be given the opportunity to apply for the disaster loans. The plaintiffs cannot be denied emergency loans because Howard County was not formally declared a disaster county." 589 F.Supp. at 884–85.

■■■ The Government argues that the Servaeses cannot be heard to complain about the Secretary's operation of the natural disaster loan program because they have never applied for such assistance. A similar contention was described as "meritless" by Judge Wright "because the plaintiffs were never informed that disaster relief was available." *Id.* at 885. While I am somewhat troubled that defendants apparently did not raise the issue of their eligibility for natural disaster loans until after the filing of the present wrongful detainer action, an unresolved factual issue remains as to whether, as defendants claim in the suggestions in support of their summary judgment motion, the Servaeses had no notice of the emergency or disaster loan programs prior to the foreclosure sale. Consequently, summary judgment for the Government is not appropriate at this time. Plaintiff is directed to consider defendants' application for disaster relief under 7 U.S.C. § 1961 if an application is filed within a reasonable time, not to exceed 60 days from the date of this order. Defendants may not be denied such relief merely because the county in which their farm is situated was not declared a disaster county.

*Defectiveness of Foreclosure Sale*

Defendants also seek to retain possession of their farm on the basis of alleged statutory and constitutional errors in the foreclosure sale. Because of the possibility that defendants will qualify for a loan deferral or for natural disaster loans under the first two parts of this order, the court believes that the more efficient approach would be to postpone ruling on the challenges to the foreclosure sale. When and if defendants' application for relief under 7 U.S.C. 1981a and 7 U.S.C. § 1961 is legitimately denied, the court can then examine the prior foreclosure sale and determine if proper procedures were employed. If defendants were determined to be eligible for the statutory relief discussed above, how-

ever, the need to foreclose on the premises might be removed or, at least, postponed. Accordingly, no decision on defendants' 6th–9th reasons for summary judgment is required at this time.

In accordance with the foregoing, plaintiff is hereby enjoined from executing on its Trustee Deed under Power of Sale and from obtaining possession of the disputed premises without the consent of the defendants until such time as the necessary compliance with 7 U.S.C. § 1981a and 7 U.S.C. § 1961, as described in this order, is made. Jurisdiction is retained to give either party further relief based on future developments. SO ORDERED.