723 F.2d 631
 Roger L. ALLISON and Shirley A. Allison, Appellees,
v.
John R. BLOCK, U.S. Department of Agriculture; Allen Brock,
Acting Assistant Administrator of Farmer Programs;
Charles Shuman; John O. Foster;
William T. Shay; and David E.
Cox, Appellants.
 No. 83-1194.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1983.
Decided Dec. 28, 1983.
 
 Sarah M. Vogel, Robert Vogel, Grand Forks, N.D., William R. King, Lipshutz, Frankel, Greenblatt, King & Cohen, Atlanta, Ga., Burt Neuborne, American Civil Liberties Union Foundation, New York City, Allan Kanner, Philadelphia, Pa., for amicus curiae.
 Williams, Reesman & Tate, Dale Reesman, Boonville, Mo., for Gulf & Great Plains Legal Foundation of America.
 B. Luann Ridgeway, Kansas City, Mo., for appellees.
 Robert G. Ulrich, U.S. Atty., Mark J. Zimmermann, Asst. U.S. Atty., Kansas City, Mo., for appellants.
 Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 In 1978, Congress enacted 7 U.S.C. Sec. 1981a (1982), an amendment to the Consolidated Farm and Rural Development Act of 1961 (CFRDA), 7 U.S.C. Secs. 1921 et seq. (1982). Two years thereafter, Roger and Shirley Allison defaulted on farm loans granted to them by the Farmers Home Administration (FmHA) of the United States Department of Agriculture (USDA) under the CFRDA. The Allisons brought suit in the United States District Court for the Western District of Missouri seeking consideration of their eligibility for a section 1981a deferral on the foreclosure of their farm by the Secretary of Agriculture (Secretary). The district court enjoined foreclosure on the Allisons' farm until the Secretary complied with the letter and spirit of section 1981a. Allison v. Block, 556 F.Supp. 400 (W.D.Mo.1982). We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 The Allisons own and operate a farm in Howard County, Missouri. On December 20, 1977, they obtained FmHA financing under the CFRDA in the amount of $103,800, secured by a deed of trust on their realty. Because of adverse weather conditions in 1977 and low grain and livestock prices in 1978, they failed to turn a profit on the operation of the farm during those years. On December 22, 1978, Roger Allison applied for an FmHA economic emergency loan. The FmHA Howard County Committee denied the application. On appeal, the State Director of the FmHA approved a $29,000 operating loan but denied refinancing assistance. On June 26, 1979, the Assistant Administrator of the FmHA reversed the State Director's decision insofar as it denied Allison's reorganization loan request, holding that the denial "was unreasonable because [he] met the eligibility requirements * * * [and] the proposed Farm and Home Plan submitted by Allison on April 9, 1979, showed reasonable repayment ability." Allison v. Block, supra, 556 F.Supp. at 402. On August 24, 1979, the Allisons received a $190,000 reorganization loan, secured by a deed of trust on their farm. On April 28, 1980, they received a $29,750 operating loan, secured by a deed of trust and liens on their equipment, livestock, supplies, and inventory.
 
 
 4
 Adverse weather and economic conditions continued to hamper the Allisons' farming operations. In 1979, a dry planting season followed by an early frost reduced their crop yield significantly. In 1980, a severe drought contributed to an eighty-seven percent reduction in corn yield and a sixty-eight percent reduction in bean yield. Following these losses, the Allisons became delinquent on their FmHA loan payments.
 
 
 5
 On November 6, 1980, an FmHA County Supervisor advised Roger Allison to sell the Allisons' breeding stock and equipment in order to make payments on their loans. Allison complied and, in the spring of 1981, the FmHA applied the proceeds of these sales to reduce the delinquency on the Allisons' April 28, 1980, operating loan.
 
 
 6
 On May 14, 1981, the FmHA accelerated the Allisons' indebtedness, as to both principal and interest, for failure to make timely payments and failure to pay real estate taxes. It notified them that their loans, which were classified as emergency (EM) and economic emergency (EE) loans, would be foreclosed unless the total indebtedness was paid by June 15, 1981. The Allisons appealed the acceleration notice to the FmHA District Director and Assistant Administrator; both upheld the decision. The Allisons then brought their final administrative appeal before the Administrator of the FmHA (Administrator). Pending this appeal, Roger Allison read in a farming magazine about possible loan deferral relief under federal statute and requested such relief from the Administrator. On August 10, 1982, the Program Assistant to the Administrator denied the Allisons' appeal, rejecting the alternatives of consolidation, rescheduling, reamortization, or deferral because the Allisons "did not have the potential to generate sufficient farm income to repay family living and farm operating expenses plus debt service even if a deferral had been granted." Allison v. Block, supra, 556 F.Supp. at 403 (quoting statement from FmHA Program Assistant).
 
 
 7
 On October 27, 1982, the Allisons filed the present action requesting declaratory and injunctive relief from the acceleration of their loans and foreclosure on their property. They alleged that the Secretary's failure to promulgate adequate procedural and substantive regulations creating a program for loan deferrals under 7 U.S.C. Sec. 1981a (1982) violated that statute, amounted to a denial of equal protection and due process, and constituted an abuse of administrative discretion. The district court agreed with the Allisons that the Secretary violated section 1981a and abused his discretion in failing to give them proper notice of the availability of deferral possibilities and in neglecting to create a procedure under which they could apply for administrative consideration of such deferral relief. The court enjoined the Secretary from foreclosing on the Allisons' property "until such time as the necessary compliance with 7 U.S.C. Sec. 1981a * * * is made." Allison v. Block, supra, 556 F.Supp. at 406.
 
 II
 STATUTORY REQUIREMENTS
 
 8
 On appeal, the Secretary asserts that the district court erred in requiring special procedures or standards to be followed by virtue of section 1981a with regard to FmHA loan servicing and foreclosure activities.[1] The gist of his argument is that section 1981a merely created an additional power to be wielded at the discretion of the agency, or placed in the Secretary's "back pocket" for safekeeping. We reject this argument and affirm the district court. The full text of section 1981a is as follows:
 
 
 9
 In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: Provided, That if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.
 
 
 10
 7 U.S.C. Sec. 1981a (1982).
 
 
 11
 The Secretary would have us hold that this statute requires no adjudicatory or regulatory administrative action because it creates no administrative procedural requirements nor any substantive right to relief from loan acceleration or foreclosure. We refuse to so hold. In our view, section 1981a creates a right to have certain uniform procedures established and requires the Secretary to develop substantive standards applicable to deferral applications.[2]
 
 A. Procedural Requirements
 
 12
 Section 1981a expressly conditions the Secretary's authority to grant relief to CFRDA borrowers upon two actions by the borrower: (1) a request for such relief; and (2) a showing that, because of circumstances beyond the borrower's control, he or she is temporarily unable to continue payments of principal and interest without unduly impairing his or her standard of living. Following such a request and showing, the Secretary "may permit" deferral of payments of principal and interest and "may forego" foreclosure.
 
 
 13
 We agree with several federal district courts which have held that, reading the statute as a whole and giving meaning to each word therein, Congress intended the Secretary to give notice of the availability of section 1981a relief to all CFRDA borrowers subject to loan acceleration or foreclosure and to establish a uniform procedure under which borrowers can make the requisite request and prima facie showing. See, e.g., Jacoby v. Schuman, 568 F.Supp. 843, 846 (E.D.Mo.1983); Matzke v. Block, 564 F.Supp. 1157, 1166-1167 (D.Kan.1983); Coleman v. Block, 562 F.Supp. 1353, 1361-1362 (D.N.D.1983); Allison v. Block, supra, 556 F.Supp. at 405-406; Curry v. Block, 541 F.Supp. 506, 523-526 (S.D.Ga.1982). The requirement of a request by the borrower prior to consideration for section 1981a relief presupposes that the borrower has knowledge of the availability of such relief. Notice to the borrower is therefore indispensable. In like manner, the requirement of a showing of prima facie eligibility is necessarily premised upon the expectation that some procedure will be provided under which the borrower may make the requisite showing. Thus, the rudimentary elements of adequate notice and an opportunity to be heard are embodied in the language of section 1981a. See Allison v. Block, supra, 556 F.Supp. at 405-406.
 
 
 14
 Furthermore, the legislative history underlying the statute supports the conclusion that the Secretary is required to give notice to defaulting CFRDA borrowers and to create a procedure for asserting section 1981a claims. The precatory language to the House report concerning the 1978 legislation which included section 1981a stressed that the legislation was aimed at "[g]iving people a chance" and assisting farmers "to remain on the land and carry on sound operations." H.R.Rep. No. 95-986, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.Code Cong. & Ad.News 1106, 1127. At least one witness before the House Agriculture Committee expressly recognized that "the first step the Government must take is to halt farm loan foreclosures through the passage of emergency Federal legislation." Id. at 24, reprinted in 1978 U.S.Code Cong. & Ad.News at 1129.
 
 
 15
 More specifically, the House report made an explicit comparison between the House version of section 1981a and language "in the Housing Act with respect to housing loans by the Farmers Home Administration." Id. at 27, reprinted in 1978 U.S.Code Cong. & Ad.News at 1132. See 42 U.S.C. Sec. 1475 (1976) (comparable language in federal housing legislation). The Secretary implemented the housing legislation mentioned in this report with a detailed set of regulations, providing for notice and a multi-step procedure for requesting a moratorium on rural housing loan payments. See 7 C.F.R. Sec. 1951.313 (1983). The express reference to the housing statute in the legislative history to section 1981a indicates that the 1978 Congress expected the Secretary to implement section 1981a in a similar manner.
 
 
 16
 The House conference report, which was a joint explanatory statement on the 1978 agricultural credit legislation, noted that the original House version of section 1981a authorized a moratorium under "regulations prescribed by the Secretary." H.Conf.Rep. No. 95-1344, 95th Cong., 2d Sess. 28, reprinted in 1978 U.S.Code Cong. & Ad.News 1176, 1187. One federal district court interpreted the change between this House version and section 1981a as enacted, which does not specifically refer to regulations, to indicate that Congress did not intend to require the establishment of a uniform procedure governing FmHA deferral decisions. Neighbors v. Block, 564 F.Supp. 1075, 1079-1080 (E.D.Ark.1983). We do not agree with this interpretation.
 
 
 17
 Although the change between the House and Conference versions of section 1981a served to delete the express reference to regulations in the House bill, the Conference Committee retained other language from that bill emphasizing "that--in order to be eligible to receive a moratorium--a borrower must show that, due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of principal and interest due on the loan without impairing unduly the borrower's standard of living." H.Conf.Rep. No. 95-1344, supra, at 28, reprinted in 1978 U.S.Code Cong. & Ad.News at 1187. This retention reflects an intention by the Conference Committee to require the creation of uniform procedural requirements for a section 1981a deferral program.
 
 
 18
 In addition to the official reports preceding section 1981a, comments made during the 1978 debates on the statute reflect a congressional intent that the Secretary develop an effective program offering deferral relief to defaulting farmers. Senator Eagleton, a prime mover behind the deferral statute, made the following remarks:
 
 
 19
 I should note that the original form of my amendment gave the Secretary of Agriculture no discretion in the implementation of the loan deferral program. However, as the result of the personal assurance I have received from the Secretary of Agriculture that the loan deferral program will be carried out without interest being charged on interest, I have modified my amendment so that this deferral program will be within the Secretary's discretionary authority.
 
 
 20
 124 Cong.Rec. 12133 (1978) (remarks of Sen. Eagleton).
 
 
 21
 Senator Dole, on the date of the passage of section 1981a in the Senate, expressed concern that Congress provide sufficient personnel and technical resources to the FmHA to promptly implement all of the 1978 agricultural credit legislation. He stated, "The new programs in this bill will not benefit farmers, ranchers and rural communities unless the regulations can be issued promptly and the loans made and serviced in a timely manner." Id. at 22000 (remarks of Sen. Dole). These comments indicate that, although Congress gave the Secretary discretion in the final decision regarding the deferral of individual loans, the legislators did not intend for the Secretary to place section 1981a in his "back pocket;" there was never any question that Congress intended the development of a loan deferral program governed by uniform procedures.
 
 
 22
 Against this backdrop of statutory language and legislative history, we cannot accept the Secretary's assertion that Congress left the implementation of section 1981a a matter of unfettered administrative discretion. The cases principally relied on by the Secretary, Heim v. United States, 680 F.2d 564 (8th Cir.1982), and Rank v. Nimmo, 677 F.2d 692 (9th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982), are not controlling. In Heim, we upheld the Secretary's exercise of administrative discretion in denying funds to eradicate tuberculosis in the plaintiff's elk herd under the federal Tuberculosis Eradication Program. We stated that the Secretary's decision "that appropriated funds are better spent on cattle and swine than on elk * * * [was not] arbitrary, capricious, or contrary to law." Heim v. United States, supra, 680 F.2d at 566. We were not asked in Heim to decide whether the Secretary could have refused to develop a bovine tuberculosis eradication program altogether. Likewise in Rank, the Ninth Circuit took care to distinguish its holding that a certain provision of the Veterans Administration law did not require any administrative action from cases "where the applicable statute or legislative history clearly revealed a Congressional intent to require the agency to implement a statutory program." Rank v. Nimmo, supra, 677 F.2d at 701 (citations omitted).
 
 
 23
 The Secretary also contends that currently published regulations fulfill whatever notice or hearing requirements which were created by section 1981a. We disagree. Section 1951.33 of Title 7 to the Code of Federal Regulations provides for FmHA servicing of certain operating loans, such as the $29,750 emergency operating loan granted to the Allisons on April 28, 1980. 7 C.F.R. Sec. 1951.33 (1983). The deferral authority under this regulation is conditioned, however, on requirements totally foreign to the language and purpose of section 1981a. For example, an FmHA County Supervisor cannot defer payments under this regulation "in lieu of or to delay liquidation." Id. at Sec. 1951.33(b)(1). More importantly, neither this regulation nor 7 C.F.R. Sec. 1951.40(b)(2) (1983), which addresses deferral as a servicing device for certain real estate loans, provides for notice to defaulting borrowers or a uniform procedure under which the borrower can make the requisite prima facie showing prior to any adverse loan servicing action, such as liquidation of the loan security. Indeed, the Secretary has no authority to defer under section 1981a absent the request of a borrower and the requisite prima facie showing, so the Secretary's argument that FmHA County Supervisors "consider" section 1981a relief in every case under existing regulations does not persuade us that these regulations represent sufficient implementation of the statute. Contra Neighbors v. Block, supra, 564 F.Supp. at 1081 (federal district court adopting argument that current regulations sufficiently implement section 1981a). Thus, the Secretary's reliance on regulations passed as general loan servicing guidelines appears as more of an afterthought than an earnest attempt to comply with the specific mandates of section 1981a.
 
 
 24
 We therefore affirm the injunction against foreclosure of the Allisons' farm until the Secretary has complied with his responsibilities to provide adequate notice and procedures under which the Allisons may make the requisite prima facie showing and otherwise demonstrate their eligibility for a section 1981a deferral. Because the Allisons already have notice of the existence of section 1981a, the Secretary may fulfill the notice requirement of the statute in this case by giving the Allisons personal notice of the proper procedures once established.
 
 B. Substantive Standards
 
 25
 The district court found that the Secretary abused his discretion in dealing with the Allisons "by failing to fully consider the applicability of 7 U.S.C. Sec. 1981a's loan deferral relief." Allison v. Block, supra, 556 F.Supp. at 403. As we read the court's opinion, the statute itself, and its legislative history, this conclusion encompasses more than the procedural formalities which we have just discussed. Good faith consideration of the section 1981a deferral alternative by the Secretary requires the existence of some substantive standards which, if met, entitle the borrower to relief. Because any other construction would render the statute mere procedural "window-dressing," a result abhorrent to the language and purpose of the 1978 agricultural credit legislation and absurd as a matter of policy, we hold that section 1981a also requires the development of substantive standards at the agency level to guide the Secretary's discretion in making individual deferral decisions. Contra Neighbors v. Block, supra, 564 F.Supp. at 1084 (section 1981a is at most procedural and therefore not the "real relief" needed by farmers delinquent on their CFRDA loans).
 
 
 26
 We cannot accept the Secretary's implicit assertion that the discretion to decide individual cases includes the authority to decide, without formal rulemaking, that--regardless of a borrower's request and prima facie showing, and the particular facts of the case--no CFRDA borrower is eligible for section 1981a deferral relief. See Matzke v. Block, supra, 564 F.Supp. at 1168. We stated in the context of the Secretary of Transportation's disbursement of federal highway funds,
 
 
 27
 [The highway appropriation statute does not create] discretion in the Secretary to withhold approval on projects Congress has specifically directed because of a system of priorities the Executive chooses to impose on all expenditures. The Congressional intent is that the Secretary may exercise his discretion to insure that the roads are well constructed and safely built at the lowest possible cost, all in furtherance of the Act, but when the impoundment of funds impedes the orderly progress of the federal highway program, this hardly can be said to be favorable to such a program. Indeed, it is in derogation of it. It is difficult to perceive that Congress intended such a result.
 
 
 28
 State Highway Commission v. Volpe, 479 F.2d 1099, 1114 (8th Cir.1973). In like manner, section 1981a cannot be read to give the Secretary of Agriculture the authority to deny all deferral requests ex cathedra, without public notice and comment on such a blanket policy.
 
 
 29
 Section 1981a expressly creates prima facie substantive standards of eligibility for deferral relief--"that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of * * * principal and interest when due without unduly impairing the standard of living of the borrower." 7 U.S.C. Sec. 1981a (1982). Besides contemplating the existence of a procedure under which the borrower may make the prima facie showing, these preliminary substantive standards limit the number of borrowers eligible for section 1981a relief, indicating Congress's expectation that at least some of those borrowers would in fact merit such relief. Indeed, the title to section 1981a, as presented to Congress and codified as enacted, refers to a "moratorium and policy on foreclosures." Id.; Agricultural Credit Act of 1978, Pub.L. No. 95-334, Sec. 122, 92 Stat. 420, 427. Congress surely would not consider an empty procedural shell, with no substantive measure of relief, to be a policy at all.
 
 
 30
 Furthermore, the legislative history behind section 1981a exhibits Congress's intent that the Secretary respect the substantive standards explicitly set forth, and establish whatever other standards consistent with and necessary to the statute, in administering the emergency loan deferral program. The congressional debates all revolve around the structure and content of the "program" authorized by section 1981a, a strange term if the Secretary could merely make a decision unsupported by administrative investigation or public comment that no borrower deserves the relief which Congress authorized. See, e.g., 124 Cong.Rec. 12133, 22000 (1978) (remarks of Senators Eagleton and Dole). The reference to home loan deferral legislation found in the House report on the 1978 statute also indicates that Congress intended the development of substantive standards to govern section 1981a deferral decisions, since the regulations implementing the housing loan program establish both a detailed procedure and substantive criteria for eligibility. See H.R.Rep. No. 95-986, supra, at 27, reprinted in 1978 U.S.Code Cong. & Ad.News at 1132; 7 C.F.R. Sec. 1951.313(b)(1)-(2), (c), (d) (1983).
 
 
 31
 We do not decide in what manner the Secretary must develop the substantive standards applicable to section 1981a deferral requests. The District of Columbia Circuit noted under similar circumstances:
 
 
 32
 If regulations of general applicability were formulated, it would of course be possible to explain individual decisions by reference to the appropriate regulation. It may well be, however, that standards * * * can best be developed piecemeal, as the Secretary evaluates [particular cases]. Even so, he has an obligation to articulate the criteria that he develops in making each individual decision. We cannot assume, in the absence of adequate explanation, that proper standards are implicit in every exercise of administrative discretion.
 
 
 33
 Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 596 (D.C.Cir.1971). Although we believe that formal rulemaking would better insure a uniform set of substantive standards to govern section 1981a requests, we recognize that the Secretary may decide to develop the criteria through adjudicative processes which give some precedential effect to prior FmHA loan deferral decisions. See Matzke v. Block, supra, 564 F.Supp. at 1166. The fact remains at present, however, that the Secretary has chosen neither a process of reasoned decisionmaking to safeguard against an abuse of section 1981a discretion nor the publication of uniform regulations to be used as substantive standards to guide the exercise of that discretion. See Environmental Defense Fund, Inc. v. Ruckelshaus, supra, 439 F.2d at 596; see also 2 K. Davis, Administrative Law Treatise Sec. 7:26, at 128-132 (2d ed. 1979). We cannot accept this complete abdication of the Secretary's responsibilities under section 1981a.
 
 
 34
 For purposes of the present appeal, we affirm the injunction against foreclosure on the Allisons' farm not only pending proper notice of the procedures developed to process section 1981a requests, as previously discussed, but also pending publication of uniform substantive regulations or a reasoned decision on their particular request consistent with section 1981a requests nationwide.[3] We emphasize that, should the Secretary decide to develop substantive criteria through case-by-case adjudication, he cannot achieve this goal by considering each case in isolation. The Supreme Court succinctly stated, "No matter how rational or consistent with congressional intent a particular decision might be, the determination of eligibility cannot be made on an ad hoc basis by the dispenser of the funds." Morton v. Ruiz, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974). Thus, even if the Secretary does not publish formal findings of fact and conclusions of law in each case, he must clearly articulate the reasons for each section 1981a decision in a manner susceptible to judicial review for an abuse of discretion. See City of West Chicago v. United States Nuclear Regulatory Commission, 701 F.2d 632, 648 (7th Cir.1983).
 
 III
 CONCLUSION
 
 35
 We realize that the plight of many farmers throughout the nation is so bleak that the forbearance of creditors will not save their operations. We are also aware, however, that the agricultural industry is especially vulnerable to the changing winds of time, nature, fate, and the economy; farmers of skill, perseverance, and dedication are no less vulnerable. Congress in 1978 clearly expressed its intent to assist farmers blown astray by these winds by granting those who could show that their inability to meet their financial obligations was temporary more time to repay their debts to the government. It commissioned the Secretary to implement this intent not as a private banker, but as a public broker. We view the Secretary's conscious disregard of section 1981a as contrary to that commission, and therefore affirm the injunction on foreclosure of the Allisons' farm until the intent of Congress becomes the action of the Secretary.
 
 
 
 [1]
 The district court found it unnecessary to reach the constitutional claims raised by the Allisons because of the statutory violation. We also decline to meet the constitutional issues
 
 
 [2]
 We refer generally to the subject of 7 U.S.C. Sec. 1981a (1982) as "deferral" authority, although the statute more precisely distinguishes between deferral of loan payments and foregoing foreclosure on the security pledged on delinquent loans
 
 
 [3]
 To the extent that the Secretary argues that the FmHA in fact made a reasoned decision to deny deferral relief to the Allisons, we affirm the district court's holding that the reasons given for that denial were "conclusory, unsupported, and contradictory," and the decision was thus an abuse of discretion. Allison v. Block, 556 F.Supp. 400, 405 (W.D.Mo.1982)