**UNITED STATES of America, Plaintiff,**

**v.**

**Dennis L. BIRCHEM, a/k/a Dennis Lee Birchem; Connie R. Birchem, a/k/a Constance Rae Birchem, Henry P. Birchem; Evelyn C. Birchem; Chad Birchem; and Roberts County, a political subdivision of the State of South Dakota, Defendants.**

**Civ. No. 94–1002.**

United States District Court,
D. South Dakota,
Northern Division.

April 3, 1995.

**1336**

Bonnie P. Ulrich, U.S. Attorney's Office, Sioux Falls, SD, for plaintiff.

Ronald J. Hall, Jeffrey T. Sveen, Siegel, Barnett & Schutz, Aberdeen, SD, for defendants Dennis Birchem, Connie Birchem.

Karen A. Gangle, Sisseton, SD, for defendant Evelyn C. Birchem.

Kerry M. Cameron, Cameron Law Offices, Sisseton, SD, for defendant Roberts County.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Plaintiff, the United States of America, moved for summary judgment in an action seeking foreclosure of a Farmers' Home Administration mortgage on land owned by Defendants, Dennis and Connie Birchem, Docket No. 15. Defendants responded with a Brief in Opposition, Docket No. 27, and a Supplemental Brief in Opposition, Docket No. 43. Defendants have also moved to strike the affidavits of Laverne Tetzlaff, Docket No. 26, and Bonnie P. Ulrich, Docket No. 28, in support of the motion for summary judgment, and have objected to Plaintiff's Statement of Material Facts, Docket No. 30.

## FACTS

The events in this case are as follows:

On May 7, 1979, Henry & Evelyn Birchem sold the real estate which FmHA is attempting to foreclose to Dennis & Connie Birchem on a contract for deed for $115,000. $70,488.00 of that sale amount remains unpaid. Doc. 1 at ¶ XX.

On July 3, 1979, Dennis & Connie Birchem mortgaged the property to FmHA to secure promissory note in amount of $373,500. $556,509.62 in principal and interest remains unpaid. Doc. 1 at ¶¶ IV, V, XIV.

On April 9, 1987, Dennis & Connie Birchem filed a confirmed Chapter 11 Bankruptcy Plan. Under the terms of the plan, Defendants agreed to pay FmHA $346,450 on the secured note. Doc. 1 at ¶ XVIII. · Defendants were represented by Attorney Curt Ewinger throughout their Chapter 11 bankruptcy. Doc. 18, Exhibit A & Exhibit 4.

On July 17, 1987, the final order was entered closing the Chapter 11 bankruptcy file. Doc. 18, Exhibit A.

In March, 1988, Defendants contacted FmHA supervisor, Jeff Jacobsen, to discuss the loan and were told to call back in the fall. Doc. 31, ¶¶ 4–6.

In November, 1988, Defendants contacted Jacobsen again but were told he did not have all information on the programs and he would forward the same to Defendants when he received it. Doc. 31 at ¶¶ 7–8.

On November 17, 1988, Jacobsen wrote to Attorney Ewinger notifying him that Defendants might be eligible for loan servicing. Doc. 31, Exhibit A.

On April 4, 1989, Jacobsen sent the same letter to Attorney Ewinger again with a copy to Defendants. Both letters were sent by certified mail. Doc. 31, Exhibit B; Doc. 37, Exhibit 1.

On April 21, 1989, Chad Birchem, Defendant's son, signed for the certified letter. He then returned to college, never giving the letter to his parents. Doc. 37, Exhibit 2.

On November 9, 1989, FmHA wrote to Attorney Ewinger a third time informing him that Defendants had been denied loan servic-

ing because they had not responded to the notice previously mailed. Doc. 31, Exhibit C.

On January 22, 1990, Attorney Ewinger wrote to FmHA notifying the agency that he had not represented Defendants since July, 1987. Ewinger acknowledged that he had received letters from FmHA. Ewinger's letter was prompted by Defendant's call to him after learning they could not restructure their loan. Doc. 31, Exhibit D.

On January 31, 1990, FmHA responded to Attorney Ewinger stating that they had complied with federal regulations which only require borrowers' attorneys be notified. Doc. 31, Exhibit E.

On February 1, 1990, Attorney Ewinger wrote back to FmHA stating that FmHA should have notified Defendants directly. Doc. 31, Exhibit F.

On April 4, 1993, Henry & Evelyn Birchem sold the original Contract for Deed on this property to Chad Birchem. Doc. 1 at ¶ XXI.

On February 11, 1994, the United States filed this foreclosure action, Docket No. 1. Defendants answered, and defend the instant motion for summary judgment, on the grounds that FmHA failed to comply with the requirements of the Agricultural Credit Act of 1987 and Defendants have been denied due process because FmHA did not give them personal notice of their loan servicing rights under 7 U.S.C. § 1981a.

## NOTICE

A number of cases apply a test from *U.S. v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), to determine the law of decision in FmHA cases. *See, i.e., U.S. v. Missouri Farmers Assn, Inc.,* 764 F.2d 488, 489 (8th Cir.1985), *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986). *Kimbell* states:

Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy "dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law."

Undoubtedly, federal programs that "by their nature are and must be uniform in character throughout the Nation" necessitate formulation of controlling federal rules.

*Kimbell,* 440 U.S. at 727, 99 S.Ct. at 1458. *Kimbell* outlines a three-part test for selecting the rule of decision:

(1) Is the nature of the federal program such that a nationally uniform rule of law is necessary?

(2) Would the application of the state rule frustrate specific objectives of the federal program?

(3) Would the application of a federal rule disrupt commercial relationships predicated on state law?

*U.S. v. Molitor,* 157 B.R. 427, 428 (W.D.Wisc.1992) (citing *Kimbell,* 440 U.S. at 727, 99 S.Ct. at 1458) (state law governed length of redemption period); *U.S. v. Landmark Park & Assc.,* 795 F.2d 683, 687 (8th Cir.1986) (uniform federal rule necessary to protect HUD's interest in rents); *U.S. v. Missouri Farmers Assc., Inc.,* 764 F.2d 488, 489 (8th Cir.1984) (federal regulations rather than state commercial law governed release of governmental security interests under FmHA programs).

■ Congress addressed the need for uniform notification requirements by passing the Agricultural Credit Act of 1987, 7 U.S.C. § 1981, *et seq.* *Coleman v. Lyng,* 864 F.2d 604, 605 (8th Cir.1988) (stating passage of the Agricultural Credit Act of 1987 "cured" prior defects in notification procedures and eligibility requirements under 7 U.S.C. § 1921, *et seq.,* by providing more protection than the courts had fashioned up to that time); *Curry v. Block,* 738 F.2d 1556, 1560 (11th Cir.1984) (holding that notice was mandatory under 7 U.S.C. § 1981a); *Allison v. Block,* 723 F.2d 631 (8th Cir.1983) (affirming injunction against foreclosure pending development of procedures for notice and uniform eligibility requirements). Passage of the Agricultural Credit Act makes the rule of decision federal law. Furthermore, as the Eighth Circuit has stated:

As we have previously recognized, the application of federal law to the rights and remedies of the United States upon default of federally held or insured loans is war-

ranted by the " 'overriding federal interest in protecting the funds of the United States and in securing federal investments' ". Protection of the federal treasury and the purposes and integrity of nationwide federal lending programs is thus a "federal interest[.]"

*U.S. v. Landmark Park & Assc.,* 795 F.2d 683, 686 (8th Cir.1986).

Defendants argue that the Agricultural Credit Act, 7 U.S.C. §§ 1981a and 1981d in particular, require personal notice. Section 1981d reads:

(a) The Secretary shall provide notice by certified mail to each borrower who is at least 180 days delinquent in the payment of principal or interest on a loan made or insured under this chapter....

(c) All notices required by this section shall be contained in the regulations implementing this chapter.

7 U.S.C. § 1981d(a), (c) (1988).

The implementing regulations in effect at the time are found at 7 C.F.R. § 1951.907 and provide for notification of loan servicing programs in various situations:

(a) Accounts Accelerated Between November 1, 1985 and May 7, 1987 ...

(b) All other Farmer Program Borrowers whose FmHA loan accounts have been accelerated ...

(c) Borrowers with bankruptcies pending ... whose accounts have not been foreclosed or liquidated ...

*(d) Borrowers who have been discharged or who had plans confirmed in bankruptcy ... and who have not been foreclosed or liquidated ...*

(e) Borrowers less than 180 days delinquent ...

*(f) Borrowers 180 days delinquent ...*

(g) Borrowers in non-monetary default ... [.]

7 C.F.R. § 1951.907 (1992) (emphasis added). Defendants qualified for both categories (d)

and (f). Subsection (d) provides, in pertinent part:

(d) *Notification of borrowers who have been discharged or who had plans confirmed in bankruptcy prior to January 6, 1988, and who have not been foreclosed or liquidated prior to January 6, 1988....* [T]he *attorney of all ... borrowers with confirmed Chapter 11,* 12 or 13 *plans who are 180 days delinquent* will be sent Exhibit D of Subpart A of Part 1962 of this chapter and Attachments 1 and 2 of Exhibit A of this subpart.

7 C.F.R. § 1951.907(d) (1992) (emphasis added). Subsection (f) provides, in pertinent part:

(f) *Notification of borrowers 180 days delinquent.* Farmer Program borrowers who are 180 delinquent ... will be sent Exhibit A with Attachments 1 and 2 ... *by certified mail, return receipt requested.*

7 C.F.R. § 1951.907(f) (1992) (emphasis added).

■ FmHA determined that Defendants were in category (d). Doc. 1 at Exhibit E. All correspondence was addressed to the attorney who represented Defendants' during their bankruptcy proceedings. FmHA knew that Defendants had filed for bankruptcy, had participated in the Chapter 11 confirmation hearings,[1] and is an impaired creditor under the confirmed plan. Doc. 18 at Exhibit 4. The fact that FmHA had notice of Defendants' Chapter 11 plan is not in dispute. Nevertheless, section 1951.907(d) does not provide for notification to the borrowers themselves; it only requires notice to the attorneys of borrowers with confirmed Chapter 11 plans. I find that FmHA complied with 7 C.F.R. § 1951.907(d).

■ I find that FmHA also complied with § 1951.907(f) by sending a copy of the required notice to Defendants by certified mail on April 14, 1989. FmHA has provided the Court with the receipt of notice signed by Chad Birchem, Defendants' college-aged

---

**1.** The Bankruptcy Court Docket shows that FmHA filed a Motion for Relief from Stay on September 15, 1986. Doc. 18, Exhibit A at Bkrtcy Doc. 45. On January 15, 1987, FmHA

participated in a hearing regarding confirmation of Defendants' Amended Chapter 11 plan. *Id.* at 1/15/87. FmHA agreed to accept $346,450.00 under the plan. Doc. 1 at ¶XVIII & Exhibit 4.

son.[2] Doc. 37, Exhibit 2. Chad Birchem failed to deliver the letter to his parents. Doc. 29 at ¶ 5. Defendants do not dispute the fact that notification was received, albeit not personally by Defendants Dennis and Connie Birchem.

■ I further find that FmHA complied with the requirements of 7 U.S.C. § 1981d(a) by sending a copy of the required notice to Defendants by certified mail on April 14, 1989. Section 1981d(a) has the same requirement of notice by certified mail as 7 C.F.R. § 1951.907(f). Neither the statute nor the regulation states that a borrower must receive personal notice.

## DUE PROCESS

A fundamental principle of due process is that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). While personal notice is always adequate, it is not always practical when the interests of the State are balanced against the interests of the individual. *Id.* at 313–14, 70 S.Ct. at 656–57.

Notice which is constitutionally sufficient must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. As *Mullane* states:

The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.... [If] these conditions are reason-

ably met, the constitutional requirements are satisfied.

*Id.* at 314–15, 70 S.Ct. at 657–58. Some 35 years later, the Supreme Court addressed the rights of an individual to due process, stating:

[W]e must keep in mind ... the fact that the very nature of the due process inquiry indicates that the fundamental fairness of a particular procedure does not turn on the result obtained in any individual case; rather, "procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions."

*Walters v. Nat'l Assn. of Radiation Survivors*, 473 U.S. 305, 321, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)).

Defendants contend that their right to due process was violated, arguing that the plain language of 7 U.S.C. §§ 1981a and 1981d which requires that notice be given to borrowers implies personal notice.[3] Doc. 29 at 8. Defendants argue that they, the "borrowers," never received the certified letter as required by 7 U.S.C. § 1981d(a), that it was signed for by their son who did not deliver it to them, and that FmHA should have known from the return receipt that Defendants had not received personal notice.

■ The precise requirement of § 1981d is "notice by certified mail," 7 U.S.C. § 1981d(a), and the Supreme Court has held:

Personal service or mailed notice is required.... Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party,

---

2. Comparing the acceptance of a certified letter in these circumstances to service of process under the federal rules:

[S]ervice ... may be effected in any judicial district of the United States ... by delivering a copy of the summons and of the complaint to the individual personally *or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion residing therein....* Fed.R.Civ.P. 4(e)(2).

3. Defendants also cite *Allison v. Block*, 723 F.2d 631 (8th Cir.1983), as requiring personal notice. *Allison* is distinguishable. While the court in *Allison* did require personal notice "in this case," "because the Allisons already have notice of the existence of section 1981a," *Id.* at 636, the case was decided before 7 U.S.C. § 1981d was enacted, and holds that the Secretary of Agriculture must establish substantive standards and uniform procedures for notice of the rights conferred by 7 U.S.C. § 1981a. *Id.*

... if its name and address are reasonably ascertainable.

*Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). I find that, under *Mennonite Board,* notice by certified mail, as required by 7 U.S.C. § 1981d(a) & 7 C.F.R. § 1951.907(f), is constitutionally sufficient for due process.

■ In *Sarit v. DEA,* 987 F.2d 10 (1st Cir.1993), the First Circuit analyzed notice requirements found in the forfeiture statutes. The court held that "reasonable and technical satisfaction of the statutory requirements" for notice was constitutionally sufficient. *Id.* at 15. The court stated:

> *Mullane* ... has not generally been interpreted to require a party to make additional attempts beyond notice that is legally satisfactory at the time it is sent.... The Court has read an implicit bad faith standard into the notice inquiry, overturning notice even where formal procedures were followed if the notifying party knew or had reason to know that notice would be ineffective.

*Id.* at 14. *Sarit* examines "bad faith" through a series of cited cases in which notice was sent to addresses which the government knew, at the time, to be inaccurate for a variety of reasons. *Id.* at 14–15 (*see* cited cases). Due process demands compliance with the statutory procedures for giving notice; due process does not require personal notice.

■ Equally as important as compliance with the statutory procedures for notification is the timing of the notice. As the First Circuit stated, "Knowledge of the likely ef-fectiveness of the notice is measured from the moment at which the notice is sent." *Sarit,* 987 F.2d at 14. At the time FmHA mailed notice to Defendants by certified mail, FmHA knew both Defendants' and Attorney Ewinger's addresses and the return receipts indicated that both letters had been received. FmHA could not, at the time notice was mailed, know that Chad Birchem would receive and sign for the letter, much less neglect to deliver it to his parents.[4]

The Eighth Circuit has addressed the adequacy of notice by certified mail in a number of cases involving the IRS. The cases uniformly hold that the "statute requires only a showing of proper mailing, not actual receipt." *Morse v. IRS,* 635 F.2d 701, 702 (8th Cir.1980); *U.S. v. Ahrens,* 530 F.2d 781 (8th Cir.1976); *Brown v. Lethert,* 360 F.2d 560 (8th Cir.1966). The statute applied in the IRS cases is distinguishable from 7 U.S.C. § 1981d and 7 C.F.R. § 1951.907, in that it states, "[N]otice ... if mailed to the person subject to the liability at his last known address, [shall] be sufficient for purposes of this title[.]" *Morse,* 635 F.2d at 702 (quoting 12 U.S.C. § 6901(g)). Without discussing the adequacy of the statutory requirements, the *Morse* court wrote, "the plain meaning of [the statute] ... require[s] us to reject [plaintiff's] contention she failed to receive adequate notice under the provisions of the Code." *Id.* at 703.

More recently, the Eighth Circuit held that compliance with an Arkansas statute setting out notice requirements for securing a possessory lien in a vehicle met due process requirements. In *Muhammed v. Routh*

---

4. I am influenced by the method of analysis in *McPartlin v. Commissioner,* 653 F.2d 1185 (7th Cir.1981). In a case involving failure to receive a tax deficiency notice mailed to the taxpayers "last known address," the Seventh Circuit examined each of the parties for potential fault: the IRS, the Postal Service and the Petitioners. *Id.* at 1191. Examination of each of the parties in the instant case, indicates that fault lies somewhere other than with either Plaintiff or Defendants. Attorney Ewinger did not notify FmHA that he no longer represented Defendants until 1990—14 months and three letters after FmHA first wrote to him regarding borrowers eligibility for loan servicing programs. Defendants might have notified FmHA that Ewinger no longer rep-resented them—however, I do not find that Defendants should be charged with the knowledge of FmHA regulations and, therefore, would not have known that FmHA was required to contact the borrowers attorney and not the borrowers themselves. Finally, "[t]he law presumes delivery of a properly addressed piece of mail. However, that presumption must be overcome as to a piece of mail when no receipt notice is returned." *Id.* FmHA was fully justified in relying on the return of receipt for the certified letter mailed to Defendants on April 14, 1989. FmHA had no way of knowing that Chad Birchem would forget to give his parents the notification. While the result is harsh, there was nothing more that FmHA was required by statute to do.

*Wrecker Service,* the court held that a certified letter notifying the last owner listed on an automobile title of the intent to tow the vehicle was "constitutionally sufficient," even though the listed owner had sold the car. 14 F.3d 24, 26 (8th Cir.1994). *Muhammed* is distinguishable from this case in that the plaintiff in *Muhammed* had failed to transfer the registration for the vehicle, thereby defeating Arkansas' statutory scheme and the towing company's attempt at notification. *Id.* It is undisputed that Defendants Dennis and Connie Birchem did nothing themselves to frustrate FmHA's attempts at notification. Nevertheless, as in *Muhammed,* FMHA's compliance with the statutory provisions for notice were legally sufficient.

Defendants argue that Attorney Ewinger no longer represented them once their Chapter 11 bankruptcy plan was confirmed and, therefore, notice to an attorney who does not represent the borrower cannot be notice to the borrower, as required by 7 U.S.C. § 1981d(a). The government does not dispute the fact that Attorney Ewinger did not represent Defendants after confirmation. The government argues instead that FmHA, to the best of their knowledge at the time notice was given, complied with the notice requirements of 7 C.F.R. § 1951.907(d).

As one bankruptcy court described the effect of confirmation of a Chapter 11 plan:

> Administration of the estate ended with confirmation of the plan.... In a Chapter 11 case, the debtor owns his property after confirmation.... If the debtor fails to carry out the confirmed plan, this court may or may not even have jurisdiction to grant relief.

*In re Barker Medical Co., Inc.,* 55 B.R. 435, 436 (Bkrtcy.E.D.Pa.1985). Confirmation does not terminate a Chapter 11 bankruptcy; the bankruptcy court retains "jurisdiction to assure that the terms and provisions of the confirmed Chapter 11 plan are carried out until the plan is completed and a final decree is entered closing the case." *Walnut Assc. v. Saidel,* 164 B.R. 487, 492 (E.D.Pa.1994). As

another court pointed out, "A bankruptcy is not 'forever;' after confirmation, a debtor must normally 'go about its business without further supervision or approval' from the bankruptcy court." *In re John G. Berg Assc.,* 138 B.R. 782, 785 (Bkrtcy.E.D.Pa.1992) (quoting *Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir.1991)). Once confirmation and a final decree are entered,[5] the need for counsel may end because all that remains is for the debtor to execute the Chapter 11 plan. A statute that requires notification of an attorney presumes that each debtor will (1) engage an attorney to help with a bankruptcy plan and (2) retain an attorney while the plan is being executed. Furthermore, in the case of Chapter 11 reorganizations, the timetables for completion of the plan may be extremely long. For example, in this case, the Chapter 11 plan called for annual payments on the note held by FmHA through the year 2017. Doc. 1 at Exhibit 4.

Notification to the attorney of a borrower who has declared bankruptcy seems to be a precaution against violation of the automatic stay as FmHA is, more likely than not, a creditor. Mere confirmation of a plan does not lift the stay; it remains in effect until a case is closed (as in this instance), is dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c). However, despite the entry of a final decree in this case, Defendants continued to operate under the terms of a confirmed plan. It was not error for FmHA to classify Defendants as borrowers with a confirmed Chapter 11 plan.

The wisdom of the statutory scheme for notification found in 7 C.F.R. 1951.907(d) is not at issue here. In fact, the regulations have since been changed and FmHA is now required to notify the attorney of a borrower with a confirmed plan, and to send courtesy copies of that notification to individual borrowers. 7 C.F.R. § 1962.47(a)(3) (1995) (implemented by 7 C.F.R. § 1951.907(b) (1995)). By sending a copy of the letter addressed to Attorney Ewinger to Defendants by certified mail on April 14, 1989, FmHA went beyond

---

**5.** In the instant case, the confirmed plan was filed on April 3, 1987, and the Final Decree, administratively closing the file, was entered on July 17, 1987. The Bankruptcy Docket Sheet also indicates that copies of the Order and Final Decree were mailed to the Attorney for the Debtors, the Debtors and the U.S. Trustee. Doc. 18, Exhibit 4 at Bkrtcy. Doc. 73.

the technical requirements of 7 C.F.R. § 1951.907(d) and complied with the new regulations. I find that the courtesy copies mailed to Defendants on April 14, 1989, cured any defect in notice suffered as a result of FmHA's determination that Defendants fell within subsection (d) rather than subsection (f). FmHA reasonably and technically complied with both subsections, as well as the statutory requirement of 7 U.S.C. § 1981d(a).

## AFFIDAVITS

Defendants object to the Affidavit of Laverne Tetzlaff, Docket No. 17, alleging that, because the affiant was not county supervisor at the times in question, he does not have personal knowledge of events at issue. Defendants' objection to the affidavit of value, Docket No. 14, is that it is hearsay, being the opinion of an FmHA appraiser. Doc. 27 at 7. Defendants object to Attorney Ulrich's affidavit, Docket No. 18, because she is the attorney of record and may not testify as to material substantive facts in a contested matter. Doc. 27 at 6–7. Plaintiff's merely resist these motions on the grounds that defendants do not deny any of the facts set forth in the affidavits. Doc. 41.

▇▇ The standard for affidavits is set out in Rule 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56(e). Defendants specifically object to ¶ 4 in Doc. 17 in which Tetzlaff states "to the best of his knowledge and belief that pursuant to ... the 1987 Agricultural Credit Act ... defendants ... have been offered all servicing rights required by law." [Doc. 27 at 7]. Although he was not supervisor at the time in question, Laverne Tetzlaff may testify regarding his knowledge of the debt itself as evidenced by FmHA documents, public records, and regularly conducted activities. FRE 803. The Affidavit of Value is based entirely upon submitted documents or public records and, as such, is also admissible hearsay.

▇▇ It is also customary to attach an affidavit from the attorney of record to a motion for summary or default judgment. Such an affidavit must be made on personal knowledge. Fed.R.Civ.P. 56(e). Facts stated in such an affidavit must be admissible into evidence; such facts are likely to be admissible as documents or public records. FRE 803. Finally, the attorney of record may not testify regarding contested matters. Rules of Professional Conduct 3.7; SDCL 16–18 Appendix.

THEREFORE, IT IS ORDERED,

(1) That Defendants' Motion to Strike Affidavits of Laverne Tetzlaff, Docket No. 26, is denied on the grounds that affiant may, pursuant to Fed.R.Civ.P. 56(e), testify as to his knowledge of the debt itself as evidenced by admissible documents.

(2) That Defendants' Objection to and Motion to Strike Affidavit of Bonnie P. Ulrich in Support of Plaintiff's Motion for Summary Judgment, Docket No. 28, is granted with regard to the first sentence of paragraph 6 of Docket No. 18, which contains a legal conclusion regarding the validity of the defenses raised by Defendants. The first sentence of ¶ 6 shall be stricken. Defendant's Motion is granted with regard to the first sentence of paragraph 7 of Docket No. 18, which is a supposition rather than a statement of fact. The first sentence of ¶ 7 shall be stricken. Defendants' Motion is denied in all other respects.

(3) That Defendants' Opposition to Plaintiff's Statement of Material Facts, Docket No. 30, is overruled. Plaintiff has cured its failure to cite to the record by filing a Revised Statement of Material Fact, Docket No. 39. The Statement of Facts is properly supported by affidavits due to this Order's denial of Defendants' Motions to Strike.

(4) That Plaintiff's Motion for Summary Judgment, Docket No. 15, is granted because there is no genuine issue of material fact and due to this Court's

holding that FmHA's compliance with the statutory procedures for notification of borrowers under the Agricultural Credit Act of 1987, 7 U.S.C. § 1981, *et. seq.*, was sufficient to satisfy the constitutional requirements of Due Process. Plaintiff shall prepare and submit to the Court a judgment and supporting materials calculating the amounts of principal and interest due and owing, together with costs and disbursements, as of this date.